Donald Gene HENTHORN, Appellant,

v.

**DEPARTMENT OF NAVY,**
et al., Appellees.

No. 92–5382.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 15, 1994.

Decided July 22, 1994.

Rehearing and Suggestion for Rehearing
In Banc Denied Sept. 14, 1994.*

* Mikva, Chief Judge, did not participate in this matter.

Jack L. Goldsmith, III, Charlottesville, VA (appointed by the Court) argued the cause and filed the briefs for appellant.

Sally M. Rider, Asst. U.S. Atty., Washington, DC, argued the cause for appellees. With her on the briefs were Eric H. Holder, Jr., U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC.

Before WILLIAMS, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Donald Henthorn appeals an order of the district court dismissing his complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Henthorn's *pro se* complaint alleged that the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* (1988), entitled him to minimum wage compensation for work he performed at the U.S. Naval Air Station, Millington, Tennessee while incarcerated in the Federal Prison Camp (FPC), Millington. We hold that Henthorn's complaint failed to state a claim upon which relief could be granted and that the trial court therefore properly dismissed his complaint.

## I. BACKGROUND

For purposes of this appeal, we accept as true the following allegations of fact set forth in Henthorn's complaint. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1273 (D.C.Cir.1994). At the time his complaint was filed, Donald Henthorn was an inmate at the FPC, Millington, Tennessee, which is located at the Millington Naval Air Station.[1] During his incarceration, the Bureau of Prisons ("BOP") assigned Henthorn to work on the grounds of the Naval Air Station. There he performed a variety of janitorial, maintenance, groundskeeping and "ranchhand" chores. The BOP, which set his wage, paid him only $.12 per hour for this work. The Department of the Navy paid him nothing. Henthorn complained that he should have been paid the federal minimum wage for his labor and sought relief under the FLSA. He named as defendants the Department of the Navy, the Bureau of Prisons, the Department of Labor,[2] and the United States.

Defendants-appellees moved to dismiss for lack of jurisdiction and for failure to state a

---

1. Henthorn has since been transferred to the Federal Corrections Institute in Butner, North Carolina.

2. Henthorn apparently concedes that the Department of Labor should be dropped as a defendant in this case.

claim. Henthorn filed a brief in opposition to this motion, which he now argues raised another claim for relief under 18 U.S.C. § 4082, which allows the Attorney General to authorize a prisoner, in certain circumstances, to work in the community. The district court granted appellees' 12(b)(6) motion on the ground that Henthorn was not an "employee" within the meaning of the FLSA. We affirm.

## II. DISCUSSION

■ We review *de novo* the trial court's dismissal of Henthorn's complaint for failure to state a claim under Rule 12(b)(6). Dismissal of Henthorn's claim at the 12(b)(6) stage was proper only if, after construing the complaint liberally in Henthorn's favor and granting Henthorn the benefit of all reasonable inferences to be derived from the facts alleged, he could prove no set of facts in support of his claim that would entitle him to relief. *Kowal*, 16 F.3d at 1276. We also note that Henthorn's complaint was filed *pro se*. Pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir.1981). And, liberal as these pleading standards may be, the district court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal*, 16 F.3d at 1276. With these standards in mind, we examine the sufficiency of Henthorn's claim for relief under the Fair Labor Standards Act.

### A. *When can prisoners be "employees" under the FLSA?*

The FLSA provides that "[e]very employer shall pay to each of his employees ... not less than" the minimum wage. *See* 29 U.S.C. § 206(a)(1) (Supp.IV 1992). The Act provides generally unhelpful definitions of its critical terms. It defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The term "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." *Id.* § 203(d). An "individual employed by a public agency" includes, *inter alia*, "any individual employed by the Government of the United States ... as a civilian in the military departments (as defined by section 102 of Title 5), ... [or] in a nonappropriated fund instrumentality under the jurisdiction of the Armed Forces." *Id.* § 203(e)(2)(A)(i) & (iv). Finally the term "employ" means "to suffer or permit to work." *Id.* § 203(g).

Perhaps because these definitions are so unhelpful, the Supreme Court in *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961), announced that " 'economic reality' rather than 'technical concepts' is to be the test of employment" for purposes of the FLSA. 366 U.S. at 33, 81 S.Ct. at 936. Obedient to this direction from the Supreme Court, some lower federal courts have articulated a four-factor "economic reality" test for determining whether an individual is an "employee" covered by the FLSA. This test considers the extent to which typical employer prerogatives govern the relationship between the putative employer and employee. The test asks: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983) (internal quotations omitted). Although this Court has not explicitly adopted the economic reality test, the district court for the District of Columbia recently employed the test in determining whether a group of prisoners supervised by a prison foreman were "employees" under the FLSA, so that it could in turn determine whether the foreman was an "executive" within the meaning of the Act. *See Wilks v. District of Columbia*, 721 F.Supp. 1383, 1384 (D.D.C.1989).

Courts applying the economic reality test to prisoner-laborers have generally held that the prisoners are *not* "employees" entitled to minimum wage under the FLSA. *See, e.g., Franks v. Oklahoma State Indus.*, 7 F.3d 971 (10th Cir.1993); *Hale v. Arizona*, 993 F.2d 1387 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993); *Vanskike v. Peters*, 974 F.2d 806 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1303, 122 L.Ed.2d 692 (1993); *Miller v. Dukakis*, 961 F.2d 7 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 666, 121 L.Ed.2d 590 (1992). However, in at least two cases, courts have found that particular prisoner employment situations were covered by the minimum wage provisions of the FLSA. *See, e.g., Watson v. Graves*, 909 F.2d 1549 (5th Cir.1990); *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir.1984). Furthermore, most courts refuse to hold that prisoners are *categorically* barred from ever being "employees" within the meaning of the FLSA merely because of their prisoner status. *See Vanskike*, 974 F.2d at 808; *Hale*, 993 F.2d at 1393. Our task is to construct a test that can identify cognizable prisoner claims for minimum wage under the FLSA.

Cases that have held that prisoner-laborers were not "employees" under the FLSA have generally involved inmates working for prison authorities or for private employers within the prison compound. *See Franks*, 7 F.3d at 973 (FLSA does not apply to prisoners working inside prison); *Hale*, 993 F.2d at 1389 (prisoners working in prison programs structured pursuant to Arizona law requiring prisoners to work at hard labor are not "employees" for FLSA purposes); *Vanskike*, 974 F.2d at 808 (prisoner assigned to "forced labor" within prison is not "employee" under FLSA). In contrast, cases in which courts have found that the FLSA does govern in-

mate labor have involved prisoners working outside the prison for private employers. *See Watson*, 909 F.2d at 1553–54 (prisoners working for construction company outside the prison on work release program were "employees" of company governed by the FLSA); *Carter*, 735 F.2d at 13–14 (prisoner working as a teaching assistant at community college which paid him his wages directly could be FLSA "employee").

Based on the facts of these cases, Henthorn suggests that we adopt an inside/outside-the-prison distinction as the critical factor in determining the economic reality of a prisoner's working situation. Thus, in a case such as Henthorn's, where the prisoner performs his work "off the prison compound," Henthorn argues that this factor should cut strongly toward a finding that the FLSA applies. In contrast, the government argues that the public/private employer distinction in the above cases is the factor that carries more weight. Thus, the government argues that *Watson* and *Carter*, which found that the FLSA applied to prisoner workers, can be distinguished from Henthorn's case because "in both *Carter* and *Watson*, the inmates worked for private, outside employers." Government's Br. at 18.

■ In practice, each of these distinctions raises some difficult questions. For example, should a prisoner working for a private employer who sets up shop within the prison compound not be paid minimum wage because he does not leave the prison grounds to do his work, while a prisoner performing the same work for the same employer but in a facility outside the prison should receive FLSA protection?[3] In the same manner, should a prisoner working in a privately-run bookstore outside the prison be paid the minimum wage, but not an inmate working outside the prison in a public library? Nei-

---

3. This is not to imply that all prisoners working for private employers within prison walls *are* covered by the FLSA. For example, it may be that in the case of various prison industry programs, the relationship between the prisoner, the prison, and the outside employer is not such that application of the FLSA would be appropriate. *See, e.g., Harker v. State Use Indus.*, 990 F.2d 131, 133, 135 (4th Cir., *cert. denied,* —— U.S. ——, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993) (prisoners participating in state-run prison industry not cov-

ered by FLSA); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325–27 (9th Cir.1991) (inmates working at private plasma center inside prison not covered by FLSA); *Alexander v. Sara, Inc.*, 721 F.2d 149, 150 (5th Cir.1983) (inmates working at private laboratory inside prison not covered by FLSA). But we do not decide that question today. We decide only that the locus of the worksite is not, by itself, determinative of whether the FLSA applies.

ther the inside/outside nor the public/private distinction alone provides an adequate answer to which prisoner work situations should be covered by the FLSA.

■ In order to find a more principled ground for distinguishing cognizable from noncognizable claims by prisoners for minimum wages under the FLSA, we look behind the "economic reality" test to determine its goal. As Judge Gesell explained in *Wilks*, the "economic reality" test is designed to measure "the extent to which typical employer prerogatives, such as authority to hire and fire, control work schedules and conditions, determine the rate of payment, and maintain employee records, are exercised over the inmate by the outside employer." *Wilks*, 721 F.Supp. at 1384. Thus, the more indicia of traditional, free-market employment the relationship between the prisoner and his putative "employer" bears, the more likely it is that the FLSA will govern the employment relationship.

However, as the Seventh and Ninth Circuits have explained, the traditional factors of the "economic reality" test "fail to capture the true nature of [most prison employment] relationship[s] for essentially they presuppose a free labor situation." *Vanskike*, 974 F.2d at 809; *see also Hale*, 993 F.2d at 1394 (quoting *Vanskike* ). The Seventh Circuit in *Vanskike* went on to explain:

> Prisoners are essentially taken out of the national economy upon incarceration. When they are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees. Rather, they are working as part of their sentences of incarceration.

*Vanskike*, 974 F.2d at 810. For the prisoner in *Vanskike*, who worked inside the prison for the Department of Corrections pursuant to a penological work assignment, the Seventh Circuit determined that "the economic reality is that he [is] not an 'employee' under the FLSA." *Id.* Reasoning along the same lines, the Ninth Circuit, sitting *en banc*, noted that "[t]he case of inmate labor is different from [the] type of situation where labor is exchanged for wages in a free market. Convicted criminals do not have the right

freely to sell their labor and are not protected by the Thirteenth Amendment against involuntary servitude." *Hale*, 993 F.2d at 1394. Thus, the court declined to apply the traditional "economic reality" factors to "prisoners who work for a prison-structured program because they have to." *Id.*

These courts have appropriately distinguished prisoner labor cases that state a claim for minimum wages under the Fair Labor Standards Act from those that do not. In cases such as *Watson* and *Carter* where the prisoner is voluntarily selling his labor in exchange for a wage paid by an employer other than the prison itself, the Fair Labor Standards Act may apply. In such cases, it makes sense to apply the four-factor "economic reality" test to determine the extent to which the prisoner's relationship with his putative employer bears indicia of traditional employment concepts. However, in cases such as *Hale* and *Vanskike*, in which the prisoner is legally compelled to part with his labor as part of a penological work assignment and is paid by the prison authorities themselves, the prisoner may not state a claim under the FLSA, for he is truly an involuntary servant to whom *no* compensation is actually owed. *See Vanskike*, 974 F.2d at 809 ("Thirteenth Amendment's specific exclusion of prisoner labor supports the idea that a prisoner performing required work for the prison is actually engaged in involuntary servitude, not employment."); *see also Wilks*, 721 F.Supp. at 1384 (typically "inmate labor belongs to the penal institution and inmates do not lose their primary status as inmates just because they perform work").

■ Thus, we hold that a prerequisite to finding that an inmate has "employee" status under the FLSA is that the prisoner has freely contracted with a non-prison employer to sell his labor. Under this analysis, where an inmate participates in a non-obligatory work release program in which he is paid by an outside employer, he may be able to state a claim under the FLSA for compensation at the minimum wage. However, where the inmate's labor is compelled and/or where any compensation he receives is set and paid by his custodian, the prisoner is barred from asserting a claim under the FLSA, since he

is definitively not an "employee." At the pleading stage, this means that a federal prisoner seeking to state a claim under the FLSA must allege that his work was performed without legal compulsion and that his compensation was set and paid by a source other than the Bureau of Prisons itself. Absent such allegations, prison labor is presumptively not "employment" and thus does not fall within the ambit of the FLSA.

### B. *The Sufficiency of Henthorn's Complaint*

■ We have determined that, in order to survive a motion to dismiss, federal prisoner plaintiffs seeking relief under the FLSA must allege that their work was performed without legal compulsion and that any compensation received for their work was set and paid by a non-prison source. Applying that test to Henthorn's complaint, we determine that his claim cannot survive. Henthorn's complaint alleged: 1) that he was incarcerated at the Federal Prison Camp at Millington, Tennessee; 2) that he was assigned to work and perform manual labor by the BOP at the Naval Air Station; 3) that his work was off the prison compound; 4) that his work consisted of general janitorial and ranchhand chores; 5) that the BOP set his rate of pay at $.12 per hour; 6) that the BOP and not the Navy paid him; 7) that he returned to the prison each day for lunch; 8) that he had supervisors at the Naval Base who were apparently civilians; 9) that these supervisors reported his performance to the BOP, who had the power to give him performance-based bonuses; 10) and that the plaintiff had witnessed the Navy's firing of other inmates. Nowhere has he alleged that his work was voluntary and not compelled by the BOP. Quite to the contrary, his complaint specifically alleged that he was "assigned to work and perform manual labor by the Bureau of Prisons." Henthorn was clearly not the master of his own fate.

Henthorn's complaint also fails the second part of our test by its express allegations that the BOP set his rate of pay and that the BOP, and not the Navy, actually paid him. *See* App. 6. Henthorn argues that, in evaluating the sufficiency of his claim under 12(b)(6), we should ignore those sections of his complaint that specify who actually paid him and set his rate of pay and look instead to his *pro se* Brief in Opposition to the Government's Motion to Dismiss, which stated that the Navy paid his wage. Thus, although Rule 12(b)(6) directs the court to look only to the *pleadings,* Henthorn argues that the court must accept as true not only the allegations in his actual *complaint* but also all allegations and reasonable inferences presented by the plaintiff in supporting litigation papers. And, where the facts alleged in Henthorn's complaint are contradicted by facts alleged in his brief in opposition to the government's 12(b)(6) motion, Henthorn argues that the Court is bound to accept the version of the facts most favorable to him.

In support of this novel proposition, Henthorn relies on our statement in *Brandon v. District of Columbia Board of Parole,* 734 F.2d 56, 59 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985), to the effect that a *pro se* plaintiff "has an opportunity to develop his claim further by filing an opposition to the [defendant's] Rule 12(b)(6) motion." Henthorn's reliance on *Brandon* is misplaced. First, we are far from convinced that an "opportunity to develop [one's] claim further" is synonymous with an opportunity to allege additional facts that contradict the pleadings. That the plaintiff may further "develop his claim" in his brief in opposition may simply mean that he may flesh out the legal arguments he sketched in his complaint.

More importantly, however, our statement in *Brandon* was pure *dictum.* The question in *Brandon* was what standard should govern the *sua sponte* dismissal of a complaint filed *in forma pauperis* under 28 U.S.C. § 1915. In explaining the difference between the "truncated" *sua sponte* dismissal and the more adversarial dismissal pursuant to Rule 12(b)(6), we explained:

> When a Rule 12(b)(6) motion is filed, the plaintiff is put on notice that the legal sufficiency of the complaint is being challenged and is often given some insight into the theory upon which that challenge is made. The plaintiff then has an opportu-

nity to develop his claim further by filing an opposition to the Rule 12(b)(6) motion. *Id.* at 59. In contrast, we explained that "[n]either th[is] opportunit[y], nor the sharply honed adversarial exchange involved in a Rule 12(b)(6) motion and opposition, are present when dismissal is *sua sponte.*" *Id.* Thus, taken in context, the statement on which Henthorn relies merely described the adversary nature of a 12(b)(6) motion as contrasted with a *sua sponte* dismissal. It did not fashion a rule requiring federal courts to look beyond the pleadings in ruling on 12(b)(6) motions.

■ Other than this *dictum* from *Brandon,* we have found no case from this or any other circuit suggesting that a trial court must consider contradictory factual allegations made in a brief opposing a motion to dismiss when ruling on a 12(b)(6) motion. In fact, the sparse case law addressing the effect of factual allegations in briefs or memoranda of law suggests that such matters may never be considered when deciding a 12(b)(6) motion, *see, e.g., Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988), and most certainly may not be considered when the facts they contain contradict those alleged in the complaint. *See Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985) (emphasis added) (court of appeals reviewing dismissal under 12(b)(6) could consider facts not contained in complaint, *"provided it was not inconsistent with the allegations of the complaint"*). *Cf. Goldman v. Summerfield,* 214 F.2d 858, 859 (D.C.Cir.1954) ("[S]tatements of fact in [legal] memoranda cannot ordinarily be given the dignity of a pleading or deposition, even though no effort is made to controvert them.").

The purpose of a motion to dismiss is to assess the validity of the *pleadings. See* Fed.R.Civ.P. 12(b)(6). To require that trial courts accept as true factual allegations made

in legal memoranda, which form no part of the official record, when those allegations directly contradict the facts set forth in the complaint would be to stretch Rule 12(b)(6) far beyond even the generous pleading standards that we apply to *pro se* plaintiffs. Thus, in this case, we will look only to the allegations made in Henthorn's actual complaint.[4] These allegations, including the assertions that Henthorn was required to work at the Naval Air Station and that the BOP set Henthorn's rate of pay and actually paid him, fail to state a claim under the FLSA.

## C. *Henthorn's Alleged Claim Under 18 U.S.C. § 4082*

Henthorn finally contends that the district court erred in dismissing his complaint without first considering his claim for prevailing community wages under former section 4082 of title 18.[5] Section 4082 permitted the Attorney General to "extend the limits of the place of confinement" of certain prisoners, so that they might

work at paid employment or participate in a training program in the community on a voluntary basis while continuing as a prisoner of the institution or facility to which he is committed, provided that—

(i) representatives of local union central bodies or similar labor union organizations are consulted;

(ii) such paid employment will not result in the displacement of employed workers, or be applied in skills, crafts, or trades in which there is a surplus of available gainful labor in the locality, or impair existing contracts for services; and

(iii) *the rates of pay and other conditions of employment will not be less than those paid or provided for work of similar nature in the locality in which the work is to be performed.*

---

4. Henthorn does not complain that the district court failed to alert him to the possibility of filing an amended complaint. *Cf. Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 877–78 (D.C.Cir.1993) (reversing district court's dismissal of *pro se* complaint where plaintiff complained that district court should have alerted him to defects in his complaint and allowed him leave to amend).

5. In 1984, Congress modified § 4082(c) and recodified it at 18 U.S.C. § 3622(c) (1988). However, § 3622(c) applies only to offenses committed after November 1, 1987. Because Henthorn is incarcerated for offenses occurring before that date, 18 U.S.C. § 4082(c) (1982) is the governing section.

18 U.S.C. § 4082(c)(2) (1982) (emphasis added). We ordered supplemental briefing on whether section 4082(c) created a private right of action in prisoners working pursuant to its terms. We now find, however, that we do not need to decide whether section 4082 conferred a private right of action on federal prisoners, because even assuming that it did, no set of facts that Henthorn could prove consistent with his complaint would allow him to recover under that section.

Henthorn's complaint explicitly invoked only the Fair Labor Standards Act as a statutory source for his claim to federal minimum wage. His only mention of section 4082(c) came in his reply to the government's motion to dismiss, which did not form part of Henthorn's complaint. Even in that document, however, Henthorn's mention of section 4082 appears only as support for his FLSA claim. It is likely for this reason that the district court did not address Henthorn's alleged claim for relief under section 4082, a failure which plaintiff now assigns as error.

■ Be that as it may, however, we are mindful that a plaintiff's complaint need not invoke by name or section number the federal law under which he seeks relief. Rather, in order to state a valid claim, the Federal Rules of Civil Procedure require only that the plaintiff provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Our job, then, is to parse Henthorn's complaint in search of a "concise and plain statement" that could possibly entitle Henthorn to relief under section 4082. We find no such statement. Section 4082 authorized the Attorney General to allow certain prisoners to "work at paid employment ... *in the community on a voluntary basis* while continuing as prisoner[s]," provided that, among other things, those prisoners are paid the prevailing wage in the community. 18 U.S.C. § 4082(c)(2) (emphasis added). But Henthorn's complaint, which alleges that he was required to work by the BOP, and that he performed his work on the Naval Air Base where the federal prison camp was located cannot be described as "voluntary" work "in the community." We therefore hold that, even assuming an implied cause of

action did exist under section 4082, a question which we do not decide, Henthorn's complaint would fail to state a claim for which relief could be granted.

### III. CONCLUSION

Henthorn's complaint failed to state a claim on which relief could be granted. The district court's order dismissing this suit under Rule 12(b)(6) is therefore

*Affirmed.*