Clifford J. HERRON, et al, Plaintiffs,

v.

Ann M. VENEMAN, Secretary, United States Department of Agriculture, Defendant.

Clifford J. Herron, Plaintiff,

v.

Ann M. Veneman, Secretary, United States Department of Agriculture, Defendant.

Nos. CIV.A.03–00841(HHK), CIV.A.02–02525(HHK).

United States District Court, District of Columbia.

Feb. 9, 2004.

Charles W. Day, Jr., Joseph D. Gebhardt, Tiffany S. Rowe, Gebhardt & Associates, LLP, and Pamela Joy Bethel, The O'Riordan Bethel Law Firm, LLP, Washington, DC, for Plaintiff.

Charlene Denise Bey–Proctor, U.S. Attorney's Office, Maria Hortensia Rios, Susan K. Ullman, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendant.

### MEMORANDUM OPINION

KENNEDY, District Judge.

Plaintiffs Clifford J. Herron, Starendel S. Bryant, and O. Jim Lawson, on behalf of themselves and a class of similarly-situated plaintiffs, bring this action against defendant, Ann M. Veneman, Secretary of the United States Department of Agriculture ("USDA"), in her official capacity only, in order to enforce a class settlement agreement allegedly reached in the course of litigation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et*

*seq.* In addition, plaintiff Herron, individually, requests that the court review, in a trial de novo, the damages award in a decision rendered by an administrative judge in his own case. Before this court are the defendant's motions to dismiss and the parties' cross-motions for summary judgment. Upon consideration of the motions, the respective oppositions thereto, and the record of this case, the court concludes that defendant's motions to dismiss must be granted and that plaintiffs' motion for summary judgment must be denied.

## I. BACKGROUND

In 1995, Dr. Herron, an African–American male, applied for a newly created GS–15 position as Director of the Emergency and Noninsured Assistance Programs Division of USDA's Farm Service Agency ("FSA"). He did not receive the promotion and brought a claim for discrimination in an administrative proceeding before an Equal Employment and Opportunity Commission Administrative Judge ("EEOC Judge"). Pls.' Ex. 1 at 9–12 (*Clifford J. Herron, et al.*, EEOC No. 100–98–7120x, *et al.* (Dec. 14, 1999) (findings and conclusions)). Two years later, on February 27, 1997, Herron, along with plaintiffs Bryant, Lawson, and other class members, filed an administrative class complaint with EEOC. The class included all African–American FSA employees alleging race discrimination in the denial of a promotion or opportunity for promotion to the GS–13, GS–14 and GS–15 levels since February 27, 1995. *See id.* at 3. EEOC Judge Adria S. Zeldin found that the agency's promotion practices did not have a disparate impact on African–Americans as a class, but that the agency did discriminate individually against Dr. Herron and Harold Connor, another class member who passed away shortly after the decision. *See id.* at 4. The EEOC Judge found no other instances of individual discrimination. *Id.*

Later, after a separate hearing on damages and relief, EEOC Judge Zeldin ordered USDA to offer Dr. Herron a GS–15 position and provide accompanying back pay, $10,000 in non-pecuniary compensatory damages, and $94,795.13 in attorney's fees. Pls.' Ex. 2 at 10–11 (*Clifford J. Herron, et. al,* EEOC No. 100–98–7120x, *et al.* (Apr. 14, 2000) (recommended corrective actions)). Dr. Herron's request for $300,000 in compensatory damages was denied. *Id.* at 3–6.

USDA entered its final agency action, fully implementing the EEOC Judge's Recommended Corrective Actions. Pls.' Ex. 3 at 3 (*Clifford J. Herron, et al.*, EEOC No. 100–98–7120x, *et al.* (USDA May 30, 2000)) (final agency action). Plaintiffs–Dr. Herron, other individuals, and the administrative class–timely appealed the Final Agency Action. The EEOC's Office of Federal Operations ("OFO") vacated the EEOC Judge's findings of no class-wide discrimination. Pls.' Ex. 4 at 8–9 (*Clifford J. Herron, et al.*, EEOC No. 100–98–7120x, *et al.* (EEOC Office of Fed. Operations Sept. 27, 2002) (decision)). The EEOC OFO also disposed of individual complaints, like Dr. Herron's, this way:

We also remand each individual appeal decided by the [EEOC Judge] as well as those not specifically decided by the [EEOC Judge] but presently before us on appeal, pending a decision on the class claims. Individual complaints filed before or after the class complaint is filed and that come within the definition of the class claim(s) will be subsumed within the class complaint.

Individual Complaints alleging reprisal must be addressed on an individual basis regardless of the [EEOC Judge]'s decision on the class complaint. As there is no decision in the record addressing Mr. Herron's claim of reprisal or any other individual claim of reprisal properly

raised, we remand the issue for a decision on the merits.

*Id.* at 8 (internal citations omitted).

In response to the EEOC OFO's decision, Dr. Herron brought a timely claim in Civil Action 02–02525 ("*Herron I*"), an individual suit requesting that this court review the $10,000 compensatory damages award of the EEOC Judge, adopted by USDA in its final agency action. Plaintiff's complaint indicated that the amount was "ludicrously small" compared to the damage Herron suffered. *Herron I* Am. Compl. ¶ 17. As a result, Dr. Herron requested a trial de novo on the compensatory damages award. *Id.* ¶¶ 18, 36.

Shortly after *Herron I* was filed, USDA and the administrative class of plaintiffs began to negotiate a class settlement agreement. On February 14, 2003, plaintiffs accepted what they claimed to be a final settlement offer made by USDA on January 31, 2003. The deal included a $1,000,000 payment and other non-monetary relief in exchange for the termination of class-wide discrimination claims, and related individual claims, from February 27, 1995 to April 10, 1999. Pls.' Ex. 7 at 1–2 (Gebhardt Ltr. to Hardin, Feb. 14, 2003). Plaintiffs, however, understood the alleged settlement agreement to apply to "the above-referenced case only, and no other pending case"; specifically, it did not apply, *inter alia*, to "any claims currently filed in a court of law, or at the EEOC's Office of Federal Operations." *Id.* at 2. In response, USDA claimed that plaintiffs' statement, purporting to limit the scope of the claims extinguished, constituted "conditions to [plaintiffs'] acceptance of the Department's offer" and a rejection of USDA's final offer, which expired on February 14, 2003. *See* Pls.' Ex. 8 at 1 (Hardin Ltr. to Gebhardt, Feb. 19, 2003).

USDA effectively gave plaintiffs until February 20, 2003 to accept the offer. *Id.* at 2 ("If you did not intend to make a counter-offer, or to place conditions on your acceptance of our unconditional final global offer, please contact me in writing by the close of business (5 pm) tomorrow."). Plaintiffs, in turn, answered that they had accepted USDA's January 31 offer, that they did not believe the parties had agreed to a "global settlement" but merely agreed to extinguish the claims of the administrative class, and that they believed that USDA had engaged in various harassing tactics aimed at "provok[ing] the class into rejecting USDA's settlement offer." *See* Pls.' Ex. 9 at 1–3 (Gebhardt Ltr. to Hardin, Feb. 20, 2003). Plaintiffs settled on February 20, 2003 as the date on which they accepted USDA's offer and the settlement agreement became binding. *See* Pls.' Mot. for Summ. J. at 12. Plaintiffs do not indicate how, if at all, USDA responded to allegations of its negotiating shenanigans. On March 7 and 27, 2003, USDA sent plaintiffs draft settlement agreements, Pls.' Exs. 10 and 12, that plaintiffs argue added new, unfavorable conditions to the agreement without any additional consideration. *See* Pls.' Mot. for Summ J. at 12–16. After receiving these drafts, on April 4, 2003, plaintiffs as an administrative class filed suit in this court in Civil Action 03–0841 ("*Herron II*"), claiming that USDA had breached a binding settlement agreement reached on February 20, 2003, *Herron II* Compl. ¶ 18, and seeking specific performance of the agreement. *Id.* On the same day, plaintiff Herron amended his complaint to include, in addition to his individual action, a claim requesting enforcement of the class settlement agreement. *Herron I* Am. Compl. ¶ 35. The court granted plaintiffs' motion to consolidate *Herron I* and *Herron II*.

## II. ANALYSIS

### A. Legal Standards

#### 1. Motion to Dismiss for Lack of Jurisdiction

In general, a motion to dismiss under Federal Rule of Civil Procedure 12(b) should not prevail "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Commun. Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *Beverly Enters., Inc. v. Herman*, 50 F.Supp.2d 7, 11 (D.D.C.1999). At the stage of litigation when dismissal is sought, the plaintiffs' complaint must be construed liberally, and the plaintiffs should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C.Cir.1997). A court may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case. *Artis v. Greenspan*, 223 F.Supp.2d 149, 152 (D.D.C.2002) ("A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject-matter jurisdiction."). In spite of the favorable inferences the plaintiffs receive on a motion to dismiss, it is still the plaintiffs' burden to prove jurisdiction. *See Am. Farm Bureau v. EPA*, 121 F.Supp.2d 84, 90 (D.D.C.2000).

#### 2. Motion to Dismiss for Failure to State a Claim

In evaluating a Rule 12(b)(b) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F.Supp. 914, 915 (D.D.C.1994); *see Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged"). The court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624, and matters of public record, *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n. 6 (D.C.Cir.1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C.Cir.1994).

Often the introduction of factual materials by the parties-including depositions, answers to interrogatories, admissions on file and affidavits-will convert a Rule 12(b)(6) motion to dismiss to a Rule 56(b) motion for summary judgment. Fed. R.Civ.P. 12(b) ("If, on a [12(b)(b) motion], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."). However, a "motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed." *Garita Hotel Ltd. v. Ponce Federal Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir.1992). The issue is, rather, "whether the court actually took cognizance of them." *Id.* at 19; *see also Grzelak v. Calumet Publishing Co.*, 543 F.2d 579, 583 (7th Cir.1975) (finding that where a court is concerned only with allegations in a complaint, and not the factual materials

presented, dismissal under Rule 12(b)(6) is appropriate).

## B. Failure to Exhaust Administrative Remedies

 Jurisdiction is a threshold matter; without it, this court has no authority to decide other potentially dispositive issues in this case. *See Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 757 (D.C.Cir.1987) (Green, J., concurring) (holding that "lower courts must always wrestle with [jurisdictional issues] before reaching any questions of justiciability, since courts may not decide issues over which they lack jurisdiction"); *Tuck v. Pan Am. Health Org.*, 668 F.2d 547, 549 (D.C.Cir.1981) ("The federal courts are courts of limited jurisdiction, and they lack the power to presume the existence of jurisdiction in order to dispose of a case on any other grounds."); *Am. Farm Bureau*, 121 F.Supp.2d at 91 ("The court must address the issue of jurisdiction as a threshold matter, because absent jurisdiction the court lacks the authority to decide the case on any other grounds."). Therefore, before considering any other potentially dispositive arguments, the court must first consider the jurisdictional issue defendant raises-that plaintiffs failed to exhaust administrative remedies.

 A court can exercise jurisdiction over only those claims contained in a plaintiff's administrative complaint, or claims "like or reasonably related to" allegations in the administrative complaint, that were exhausted. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C.Cir.1995) (internal quotation marks and citation omitted); *Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 49 (D.D.C.1997). Specific to this case, a party who alleges a federal agency's noncompliance with a settlement agreement must, prior to filing suit in federal district court, notify, in writing, the EEO Director of the agency within thirty days of when the complainant knew or should have known of the alleged noncompliance. 29 C.F.R § 1614.504(a). Thirty-five days after providing notice, a party may then appeal to the EEOC or seek judicial review. *Malcolm v. Reno*, 129 F.Supp.2d 1, 7 (D.D.C.2000) (citing *Saksenasingh v. Secretary of Educ.*, 126 F.3d 347, 350 (D.C.Cir.1997) and 29 C.F.R § 1614.504(b)). A plaintiff's failure to follow this procedure will deprive a federal court of subject matter jurisdiction over any claims involving a settlement agreement with a federal agency. *See Sanders v. Reno*, 186 F.3d 684, 685 (5th Cir.1999) (affirming dismissal for lack of jurisdiction of federal employee's Title VII suit for failure to notify the agency's EEO Director of alleged noncompliance within 30 days under 29 C.F.R § 1614.504(a)). An agency-defendant has the burden to prove by preponderance of the evidence plaintiffs' failure to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C.Cir.1985) ("Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it.").

Defendants meet this burden. Plaintiffs concede that they never notified USDA's EEO Director of noncompliance. Plaintiffs claim that the settlement agreement became binding on February 20, 2003, and that they became *fully* aware of USDA's intent not to comply with the agreement around March 27, 2003. *See* Pls.' Mot for Summ J. at 12–16 (alleging that USDA's attempts to reduce settlement agreement to writing manifested attempt to violate terms agreed upon on February 20). They filed suit on April 4, 2003. There is no indication that plaintiffs notified USDA's EEO director in writing, as required by 29 C.F.R. § 1614.504(a), anytime after March 27, 2003; indeed, it seems that

they *never* provided notification. *See* Pls.' Reply at 19–27. Rather than claim that they notified USDA's EEO director, plaintiffs implicitly acknowledge their failure to do so and, instead, attempt to justify their omission. *See id.* at 20 (noting that "Plaintiffs are well aware of the requirements stipulated in 29 C.F.R. § 1614.504" but claiming that plaintiffs "have properly exhausted their administrative remedies by following to the letter the explicit instructions of USDA's attorneys in this case, who directed them ... not to talk to any Department officials about this case but to direct all communications to the Agency's attorneys."); *id.* at 23 n. 9 ("Defendant is being completely disingenuous in suggesting that Plaintiffs were require to violate USDA's attorneys' explicit instructions and make a futile appeal to the Agency's EEO Director.").

Plaintiffs provide two reasons why the court should excuse their failure to exhaust administrative remedies: (1) that USDA effectively misled them into failing to comply with 29 C.F.R. § 1614.504(a), Pls.' Reply at 19–22, and (2) that USDA had effective notice of plaintiffs' belief that USDA had failed to comply with the alleged settlement agreement. Pls.' Reply at 22–27. Both arguments are without merit.

 In Title VII cases, the exhaustion-of-remedies requirement is not absolute or insurmountable, and should be considered in light of the purposes of the exhaustion rule. *Brown,* 777 F.2d at 14 ("'Exhaustion under Title VII ... should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of rooting out ... every vestige of employment discrimination within the federal government.") (citing *President v. Vance,* 627 F.2d 353, 363 (D.C.Cir.1980)) (internal quotation marks omitted). The controlling law allows for equitable tolling, estoppel or waiver in cer-

tain circumstances-*inter alia,* when a plaintiff has made diligent but technically defective efforts to act within a limitations period, when a plaintiff has been misled by the advice of a government official about the running of a limitations period, or when an agency has acted to waive the defense. *See Bowden v. United States,* 106 F.3d 433, 438 (D.C.Cir.1997). Once the defendant meets its burden of proving that the plaintiff failed to exhaust administrative remedies, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense. *Bayer v. Dep't of Treasury,* 956 F.2d 330, 332 (D.C.Cir.1992); *Bowden,* 106 F.3d at 437.

 Plaintiffs fail to offer any valid grounds of equitable avoidance of exhaustion. First, they claim that they consciously disregarded the exhaustion requirement because USDA's counsel "directed them on three separate occasions not to talk to any Department officials about this case but to direct all communications to the Agency's attorneys." Pls.' Reply at 20. As a result, plaintiffs claim that USDA should not prevail on the failure-to-exhaust defense because USDA's "strong arm tactics," *id.,* caused plaintiffs not to contact USDA's EEO director, specifically leading plaintiffs' counsel to believe that such contact would subject them to "claims of unethical behavior and possible bar complaints" with their clients knowledge. *Id.* at 22.

Plaintiffs' argument, though they do not identify it as such, falls under the category of "reliance on the advice of another government official." *Jarrell v. U.S. Postal Serv.,* 753 F.2d 1088, 1092 (D.C.Cir.1985) (allowing for equitable tolling of statute of limitations when "the result of *justifiable* reliance on the advice of another government officer") (emphasis added) (internal citations omitted); *see also Bowden,* 106

F.3d at 438. However, as a factual matter, nothing suggests that USDA's communications misled or otherwise prevented plaintiffs from contacting USDA's EEO Director. Plaintiffs analyze three letters from USDA (dated February 12, February 14, and February 21, 2003) and emphasize that each demanded plaintiffs' counsel to communicate solely with USDA's lawyers. *See* Pls.' Reply at 20–22 (citing Pls.' Exs. 9 & 11; Def.'s Ex. 6). USDA's letters, read in context, do not suggest any attempt to mislead plaintiffs regarding their duty to contact USDA's EEO director under § 1614.504(a), if they believed USDA to be in breach of a binding settlement agreement. Rather, USDA's letters-though far from congenial-merely direct plaintiffs' attorneys to communicate only with USDA's counsel, instead of the non-attorney USDA officials plaintiffs apparently dealt with before, regarding the case and settlement negotiations:

> [T]he Department welcomes any discussions about resolving this case made through the established and proper channels. However, I [USDA's counsel Robert Hardin] want to emphasize, and remind you, that I speak for the Department in this case. . . . As you know, it is inappropriate and unethical for you, other class attorneys or representatives to communicate with any Department official while this case is in litigation. Please do not communicate directly with [USDA's Assistant Secretary for Administration Clyde Thompson, with whom plaintiffs had previously negotiated] or any other Department official regarding this case and the ongoing settlement negotiations.

Pls.' Ex. 11 at 1 (Hardin Ltr. to Gebhardt, Feb. 14, 2003). *See also* Pls.' Ex. 9; Def.'s Ex. 6 (containing similar warnings to plaintiffs counsel with regard to their communications with USDA officials aside from USDA's counsel). The letters make no mention of § 1614.504(a), USDA's EEO director, or anything related to plaintiffs' obligations to act if they believed a binding settlement agreement to be violated. Simply put, it is neither plausible nor reasonable that these letters, alleging potential ethics violations,[1] lulled or coerced plaintiffs into failing to exhaust administrative remedies per § 1614.504(a).

 Plaintiffs, as a second ground for equitable avoidance, suggest that they provided USDA effective notice that they believed USDA to be in noncompliance with the settlement agreement, Pls.' Reply at 22–27, even if they did not follow § 1614.504(a) to the letter by notifying USDA's EEO director. However, courts do not recognize "effective notice," by itself, to be a valid equitable ground for excusing a failure to exhaust administrative remedies. *See Bowden*, 106 F.3d at 438–39. Indeed, at least one court has dismissed a similar claim for effective notice. *Sanders*, 186 F.3d at 685 (rejecting a claim that a letter to the agency constituted "substantial compliance" with § 1614.504(a) when the letter was not addressed to agency's EEO director and did not allege noncompliance with settlement agreement).

 Even if the court were to accept plaintiffs' excuses for not notifying USDA's EEO Director, per § 1614.504(a), plaintiffs *still* did not exhaust all adminis-

---

**1.** It is generally unethical for a lawyer to make direct contact with an opposing party without consent of opposing counsel. D.C. Rules of Professional Conduct 4.2(a). However, this rule does not seem to ban communications such as those required by 29 C.F.R. § 1614.504(a). *See* Rule 4.2(d) ("This Rule does not prohibit communication by a lawyer with government officials who have the authority to redress the grievances of the lawyer's client . . . .").

trative remedies. In addition to § 1614.504(a)'s notification requirement, § 1614.504(b) obliged plaintiffs to give USDA thirty-five days to respond to a non-compliance complaint directed at USDA's EEO Director under § 1614.504(a). Only after waiting thirty-five days has a plaintiff exhausted all administrative remedies. *See Saksenasingh*, 126 F.3d at 351 (noting that under § 1614.504(b), a complainant can appeal to the EEOC or file suit in federal district court "any time past thirty-five days after notifying the agency"). In this case, plaintiffs did not wait. They claimed to have provided USDA effective notice of USDA's failure to comply on March 27, 2003. *See* Pls.' Reply at 26 ("Plaintiff's March 27, 2003 letter put Defendant on notice of Defendant's noncompliance with the February 20, 2003 Settlement Agreement") (citing Def.'s Ex. 13). Plaintiffs were, therefore, compelled by § 1614.504(b) to give USDA until May 1, 2003 to respond.[2] Even had plaintiffs provided proper notification on March 7, 2003–the first day they claim to have been at all aware of the USDA's non-compliance–they still would have been compelled to wait until April 11, 2003 for a response from USDA before appealing to EEOC or suing in district court. Instead, plaintiffs filed suit on April 4, 2003. *Herron II* Compl. at 19.

As a result, the court finds that plaintiffs have failed to exhaust administrative remedies, and that it lacks subject matter ju-

risdiction over the claims, in both *Herron I* and *Herron II*, that USDA failed to comply with the settlement agreement allegedly reached on February 20, 2003. The court does not reach the parties cross-motions for summary judgment on the merits of the noncompliance claims, i.e. whether there was an binding settlement agreement or not.

## C. Review of *Herron I* Damages Claim

The dismissal of the class-wide noncompliance claims, however, does not dispose of plaintiff Herron's individual claim for damages. The class-wide claims, as an attempt to *enforce* a putative settlement agreement, were subject to the exhaustion requirements in § 1614.504(a) and (b). Dr. Herron, on the other hand, seeks to *challenge* the damages awarded by the EEOC Judge. Nevertheless, the court grants defendant's motion to dismiss[3] plaintiff Herron's individual claim because, as a matter of law, the court cannot grant the relief he seeks. Specifically, plaintiff Herron wishes to challenge the EEOC damages award, in a trial de novo, without having to relitigate the issue of liability. This he is not entitled to do.

 Title VII entitles federal employees to bring their agency discrimination cases in federal court on two occasions: in order to enforce final agency actions, which offer relief based on a finding of discrimination, and in order to challenge

2. Of course, had USDA responded to plaintiffs' notification of non-compliance, with a final agency action, earlier than May 1, 2003, plaintiffs could have filed suit earlier. Plaintiffs, however, do not allege that they received an appropriate response from USDA before May 1, 2003. Plaintiffs claim quite the opposite-that they had "no other recourse against Defendant's attempts to sabotage and renege on the Settlement Agreement" than to file suit on April 4, 2003. *See* Pls.' Reply at 27.

3. The parties have introduced materials outside of the pleadings. *See* Pls.' Exs. 1–11; Def.'s Exs. 1–13. However, the court relies solely on plaintiff Herron's individual complaint. *Herron I* Am. Compl. ¶¶ 18, 36. The issue before the court-whether Dr. Herron can request a limited trial de novo only on damages-does not require reference to the factual materials presented by the parties. *See Garita Hotel*, 958 F.2d at 18; *Grzelak*, 543 F.2d at 583.

them. *See Houseton v. Nimmo*, 670 F.2d 1375, 1378 (9th Cir.1982) (citing 42 U.S.C. § 2000e–5(g) as authority for federal district courts to enforce final agency actions providing relief in Title VII claims); 42 U.S.C. § 2000e–16(c) (allowing federal employees aggrieved by final agency determination on discrimination claim to challenge decision in district court). Cases clearly distinguish these situations. First, in "enforcement" actions, an aggrieved federal employee brings a suit to enforce the terms of a final agency action-in particular, those in which an agency has found it has discriminated and committed to certain remedies-with which the agency has failed to comply. In such cases, federal courts "have uniformly granted requests for enforcement of favorable final agency and EEOC decisions without requiring de novo review of the merits of the discrimination claims ...." *Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir.1986). This is because it is unjust to "require an employee who has successfully invoked an administrative scheme designed to bind agencies to remedy discrimination to prove his or her entire case again in federal court when the agency refuses to take the ordered corrective action." *Id.* The plaintiff, in essence, simply asks the court to uphold what the agency was already obligated to do-no more, no less.

A federal employee may also challenge an unfavorable final agency determinations of their employment discrimination claims by filing a civil action. 42 U.S.C. § 2000e–16(c) ("[A]n employee ..., if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action [against] the head of the department, agency, or unit, as appropriate ...."). The Supreme Court, in *Chandler v. Roudebush,* determined that § 2000e–16(c), and in particular, the phrase "civil action," *entitled* an aggrieved federal employee to a trial de novo. 425

U.S. 840, 862, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) ("[T]here is 'specific statutory authorization' of a. district court 'civil action,' which both the plain language of the statute and the legislative history reveal to be a trial de novo.") (citations omitted). *Chandler* eliminated any confusion as to whether or not federal employee plaintiffs had a *right* to a trial de novo in cases brought under § 2000e–16(c). *See* 425 U.S. at 843 n. 4, 96 S.Ct. 1949 (noting that, before *Chandler,* four federal circuits held that § 2000e–16(c) conferred a right to a trial de novo, while three circuits denied such a right and allowed courts to engage in a more agency-deferential review).

This leaves, however, a lacuna. The statutory scheme assumes either that a plaintiff is entirely satisfied with the agency's remedy, and seeks to enforce all of it, or that she is entirely unsatisfied, and seeks to challenge all of it. *Williams v. Herman,* 129 F.Supp.2d 1281, 1282 (E.D.Cal.2001) ("The issue, however, is not so straightforward. Plaintiff's suit does not neatly fit within the regulatory scheme. On the one hand she is a satisfied employee, on the other hand she is aggrieved."). Between Title VII and *Chandler,* it is not clear whether plaintiffs may challenge only part of a final agency determination-in plaintiff Herron's case, only the damages award. No controlling authority addresses this issue. *Chandler* is not directly on point because it emphasized that a federal employee plaintiff's right to a trial de novo under § 2000e–16(c) and did not explain the scope of such a trial de novo. *See* 425 U.S. at 843, 96 S.Ct. 1949. Indeed, *Chandler* assumed, based on the facts before it, that plaintiffs would use § 2000e–16(c) to challenge final agency actions in civil actions only when the agencies or EEOC failed to find discrimination. *See id.* at 842–43, 96 S.Ct. 1949. The Supreme Court did not seem to

anticipate cases in which plaintiffs would challenge only part of a final agency action, seeking to preserve the remainder of the EEOC's findings. *See id.* Furthermore, no D.C. Circuit cases squarely addressed the issue of the availability of limited de novo review.[4]

■ There is a wealth of persuasive authority relevant to the issue before the court, but these cases are numerous, conflicting, and often confusing. Amidst these conflicting cases, the better-supported and reasoned view is that a plaintiff is not entitled to a limited or fragmented trial de novo on damages without having to relitigate favorable findings on liability.

One line of cases, following the Eleventh Circuit's decision in *Moore*, indicates that a plaintiff may *not* seek a limited de novo review of the remedy only while binding the agency to a previous finding of discrimination. *Moore* itself was not a case in which a plaintiff sought limited review of a unfavorable administrative damages award. Rather, it clarified Eleventh Circuit law by distinguishing actions to enforce administrative relief from actions to challenge unfavorable administrative decision regarding discrimination suits by federal employees.[5] A long line of cases, like

*Moore*, hold that a plaintiff challenging (not enforcing) a final agency determination on a Title VII claim must request a full trial de novo, allowing a district court to determine damages and liability on its own. *Timmons v. White*, 314 F.3d 1229, 1233 (10th Cir.2003) ("[W]e believe that the better-reasoned cases hold that a plaintiff seeking relief under § 2000e–16(c) is not entitled to litigate those portions of an EEOC decision believed to be wrong, while at the same time binding the government on the issues resolved in his or her favor."); *Haskins v. Dep't of Army*, 808 F.2d 1192, 1199 (6th Cir.1987) (recognizing that a plaintiff is "entitled to a de novo hearing if requested" but that "the district court is not bound by the administrative findings."); *Gaffney v. Potter*, 2002 WL 1008460, at *6 (N.D.Ill. May 13, 2002) ("Allowing a review of only certain aspects of the agency's final decision would not constitute a trial de novo. Instead, it would more properly be considered an appeal of certain issues. The statute and regulations do not allow such a review."); *Simpkins v. Runyon*, 5 F.Supp.2d 1347, 1351 (N.D.Ga.1998) (finding that a federal plaintiff was either entitled to enforcement of an award or a *"de novo,* plenary trial on

4. One D.C. Circuit case, in determining whether there was a final agency decision finding employment discrimination, found inapposite cases involving plaintiffs requesting de novo review of only the damages portions of final agency actions. *See Diamond v. Atwood*, 43 F.3d 1538, 1541 (D.C.Cir.1995).

5. The *Moore* court revisited its own misstatement of the law. Previously, the Eleventh Circuit panel found that a district court could, in an action to enforce a final agency action, determine the merits of a discrimination claim de novo and was not bound by a prior EEOC decision. *See* 780 F.2d at 1560 (citing the previous, erroneous decision in *Moore v. Devine*, 767 F.2d 1541 (11th Cir.1985)). The court corrected itself, noting that EEOC findings of discrimination bound a district court, but only in enforcement suits. 780 F.2d at

1560. For in such a situation, it would be unjust for a court to "require an employee who has successful invoked an administrative scheme designed to bind agencies to remedy discrimination to prove his or her entire case again in federal court when the agency refuses to take the ordered corrective action." *Id.* at 1563. However, *Moore* did not involve a straightforward enforcement action, as the plaintiff had requested a trial de novo on the merits. *Id.* at 1561. As a result, the court held that where an "employee files a complaint asking the district court to consider the case on the merits and proceeds to trial de novo of the very claims resolved by the EEOC, he or she cannot complain when the district court independently resolves the claims on the merits." *Id.* at 1564.

the merits"); *Cocciardi v. Russo,* 721 F.Supp. 735, 738 (E.D.Pa.1989) (finding that a plaintiff challenging a final agency must be granted "no more and no less than a 'trial *de novo.*' ").

Some of these cases cite *Moore* as if it were a clear statement against limited de novo review, which it is not. *See Timmons,* 314 F.3d at 1234 (citing *Moore* for the proposition that a federal district court is not bound by administrative findings when plaintiff elects to proceed under § 2000e–16(c)); *Haskins,* 808 F.2d at 1200 n. 4 (same); *Gaffney,* 2002 WL 1008460, at *4 (same); *Simpkins,* 5 F.Supp.2d at 1349 (same). However, these cases do not seem to otherwise miscast relevant case law, in contrast to the cases allowing de novo review, analyzed below.

The cases in the *Moore* line provide two other compelling reasons why § 2000e–16(c) and *Chandler* do not allow limited *de novo* trials on damages only. First, the standard definition of "trial de novo" is a "new trial on the entire case-that is, on both questions of fact and issues of law-as if there had been no trial in the first instance." *Timmons,* 314 F.3d at 1233 (citing *Black's Law Dictionary* (7th ed. West 1999)); *see also Cocciardi,* 721 F.Supp. at 737 (finding that a trial de novo is a "new trial or retrial had in which the whole case is retried as if no trial whatever had been had in the first place") (citing *Black's Law Dictionary* (5th ed. West 1979)). The D.C. Circuit, in another context, subscribes to this definition of "de novo." *See Doe v. United States,* 821 F.2d 694, 697–98 (D.C.Cir.1987) (finding, in a case involving the Privacy Act, 5 U.S.C. § 552a(e)(5), that "[d]e novo means here, as it ordinarily does, a fresh, independent determination of 'the matter' at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclu-sion.") (citations omitted). Second, the Supreme Court seemed to understand "trial de novo" as an entirely new trial over all aspects of a case. *Chandler* left open the possibility that

> [p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial de novo. Moreover, it can be expected that, in light of the prior administrative proceedings, many potential issues can be eliminated by stipulation or in the course of pretrial proceedings in the District Court.

425 U.S. at 864 n. 39, 96 S.Ct. 1949 (internal citations omitted). These statements would be unnecessary, and indeed strange, if the Supreme Court had thought that prior administrative findings would be binding upon a later district court proceeding. *See Timmons,* 314 F.3d at 1235; *Cocciardi,* 721 F.Supp. at 737–38 (citing *Chandler,* 425 U.S. at 864–65, 96 S.Ct. 1949, and statutory authority directly, instead of *Moore,* as support for holding that federal plaintiffs could not seek "fragmented" trial de novo).

The *Moore* line of cases are not unassailable. Nevertheless, the cases allowing limited de novo review are manifestly flawed. Beginning with *Pecker v. Heckler,* these cases diverge from the *Moore* line and hold that a plaintiff *is* entitled request a trial de novo over the remedy only without having to relitigate the merits (i.e. finding of discrimination). 801 F.2d 709, 711 n. 3 (4th Cir.1986) (finding that, in an action to review only the remedy provided by the EEOC, the defendant federal agency defendant was "bound by the EEOC's findings of discrimination and retaliation."); *Girard v. Rubin,* 62 F.3d 1244, 1247 (9th Cir.1995) (citing other cases approvingly for the proposition that "an employee could seek review of parts of a

favorable EEOC decision without risking review of the remainder of that decision"); *Morris v. Rice,* 985 F.2d 143, 146 (4th Cir.1993) ("[T]he plaintiff may limit and tailor his request for a *de novo* review, raising questions about the remedy without exposing himself to a *de novo* review of a finding of discrimination."); *see also Williams,* 129 F.Supp.2d at 1284 (finding that a plaintiff was not "required to defend a non appealed determination" of discrimination in bringing a challenge under § 2000e-16(c)). The one relevant case decided by a sister court in the District of Columbia followed the *Pecker* line of cases. *Evans v. Secretary of Energy,* 1990 WL 51921, at *2, *4 (D.D.C. Jan.30, 1990) (finding, in a "claim for more appropriate relief for racial harassment than that offered by the agency's disposition," that "the agency is bound by the agency's acceptance of the findings of discrimination ....") (citing generally *Moore,* 780 F.2d 1559, *Pecker,* 801 F.2d 709, and *Haskins,* 808 F.2d 1192). However, as other courts have recognized,

*see, e.g., Timmons* 314 F.3d at 1236, these cases rest on weak foundations, starting with *Pecker* itself. The case erroneously cites *Moore* as authority for the proposition that a federal employee may request limited de novo review of the relief offered by a final agency determination without relitigating the merits. *Pecker,* 801 F.2d at 711 n. 3 (citing *Moore,* 780 F.2d at 1560). The passage *Pecker* cites, however, merely addresses actions to enforce final agency determinations, not actions to challenge them, whether in part or in whole. *See Moore,* 780 F.2d at 1560. *Pecker* conflates actions to enforce with actions to challenge final agency determinations, which is why it allowed EEOC findings of discrimination to be binding upon a district court even where the plaintiff *challenged* the final agency action adopting the EEOC decision. *See* 801 F.2d at 711 n. 3. Other cases allowing limited de novo trials simply follow *Pecker,* make similar mistakes in miscasting cases,[6] or engage in bizarre analysis.[7] As a result, the *Moore* line of

---

6. *Morris,* a Fourth Circuit case, followed *Pecker* and compounded its errors. The case cites, approvingly, the very passage in *Pecker* which mis-cites *Moore.* *Morris,* 985 F.2d at 146 (citing *Pecker,* 801 F.2d at 711 n. 3). But *Morris* errs on its own by miscasting *Haskins,* citing it for the proposition that "a federal employee may seek enforcement of an EEOC decision without risking a de novo review." *Morris,* 985 F.2d at 146 (paraphrasing *Haskins,* 808 F.2d at 1199 & n. 4). *Haskins,* however, specifically says that "the district court *is not* bound by administrative findings" in a de novo review under § 2000e-16(c). 808 F.2d at 1199 n. 4 (emphasis added).

*Girard* cites *Morris* approvingly, 62 F.3d at 1247, and also miscites *Haskins.* *Girard,* 62 F.3d at 1247 ("[*Haskins*] determined that an employee could seek review of parts of a favorable EEOC decision without risking a review of the remainder of that decision.") (citing *Haskins,* 808 F.2d at 1199–1200). *Girard,* like *Pecker,* conflates actions to enforce with actions to challenge.

*Evans,* decided by a sister court in this district, cites *Moore* erroneously and *Pecker*

and *Morris* uncritically. *See* 1990 WL 51921, at *2. Furthermore, *Evans* miscasts another case from this district, *Rochon v. Attorney General,* 710 F.Supp. 377 (D.D.C.1989). *Rochon* only involved the issue of the enforcement-not the challenge-of an agency's finding of discrimination. *See id.* at 379. *Evans,* however, erroneously claims that *Rochon* holds that an agency's finding of discrimination is binding when the employee challenges the agency's final action. *See* 1990 WL 51921, at *2..

7. *Williams* is particularly odd. On the one hand, *Williams* regarded skeptically the *Pecker–Morris–Girard* line of cases. *See* 129 F.Supp.2d at 1284 ("The court finds the reasoning of these cases not particularly persuasive."); *see also id.* at 1283 n. 8 ("It is not entirely clear to the court how *Haskins* assisted the Ninth Circuit in *Girard,* since it clearly was an enforcement action."). On the other hand, *Williams* also disapproved of the *Moore–Pecker* line of cases, summarily grouping them with the *Pecker–Morris* cases. *See* 129 F.Supp.2d at 1284. Oddest of all,

 

cases forbidding limited trials de novo rests on firmer, if not rock-solid, jurisprudential ground.

A trial de novo, as understood by the *Moore* line of cases, "poses certain risks for a plaintiff" who has won some relief in an administrative proceeding but not as much as she would like-she "might lose everything in such a complete new trial." *Simpkins*, 5 F.Supp.2d at 1349. However, "the Supreme Court in *Chandler* did not disregard the importance of the prior administrative process" in discrimination cases. *Cocciardi*, 721 F.Supp. at 738. A prior finding of discrimination by the EEOC, or an agency's acknowledgement of discrimination, is clearly relevant to a district court's findings in a trial de novo. But the better interpretation of *Chandler* is that a court is not *compelled* to follow previous administrative findings, however favorable to a plaintiff bringing an action under § 2000e–16(c) to challenge, not enforce, a final agency determination. As a result, the court must grant USDA's motion to dismiss plaintiffs' claim.

## CONCLUSION

The court cannot review plaintiffs' class-wide claims of noncompliance because, until and unless they have exhausted all administrative remedies, this court has no jurisdiction. The court also can not review plaintiff Herron's individual claim as framed in the Amended until and unless he seeks relief-specifically a full trial de novo-that the court is allowed to provide.

An appropriate order accompanies this memorandum.

*Williams* concluded that, under *Chevron v. NRDC*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it was obligated to "defer to agency regulations," that the agency regulations were silent on issue of whether a

## ORDER

For the reasons set forth in the court's Memorandum Opinion docketed this same day, it is this 9th day of February, 2004, hereby

**ORDERED** that Judgment is entered in favor of Defendant and the complaints in both above-captioned actions are **DISMISSED**.

plaintiff could engage in limited de novo review, and that as a result "the court may resolve the issue in favor of the employee." *Williams*, 129 F.Supp.2d at 1284.