# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued March 17, 2005           Decided June 3, 2005

No. 04-5267

ALFRIEDA S. CONNOR SCOTT, PERSONAL REPRESENTATIVE OF
THE ESTATE OF HAROLD CONNOR,
APPELLANT

v.

MICHAEL JOHANNS, SECRETARY OF AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 03cv01560)

———

*Charles W. Day, Jr.* argued the cause for appellant. With him on the briefs was *Joseph D. Gebhardt*.

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, and *Marleigh D. Dover*, Special Counsel.

Before: GINSBURG, *Chief Judge*, and TATEL and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Under Title VII of the Civil Rights Act of 1964, federal employees dissatisfied with the administrative resolution of their discrimination complaints may file suit in federal court. In this case, we must decide whether an employee who secures a final administrative disposition finding discrimination but who is dissatisfied with the remedy may challenge only the remedy in the federal court action. Answering no, the district court held that the employee must first prove liability, and we agree.

**I.**

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., provides that before filing suit, an individual alleging that a federal agency engaged in employment discrimination must seek administrative adjudication of the claim. *See generally* 42 U.S.C. § 2000e-16. Under EEOC regulations promulgated pursuant to Title VII, the employee (or job applicant) files a complaint with the employing agency. 29 C.F.R. § 1614.106(a). The employing agency then conducts an investigation and, if the employee so requests, refers the matter to an EEOC Administrative Judge ("AJ") for a hearing. *Id*. §§ 1614.106(e)(2), 1614.108-09. After the employing agency investigates or, if the employee requested a hearing, after the AJ issues a decision, the employing agency must "take final action." *Id*. § 1614.110. If the employee never requested a hearing, the employing agency's final action must "consist of findings . . . on the merits of each issue . . . and, when discrimination is found, appropriate remedies and relief." *Id*. § 1614.110(b). In cases where the employee requested a hearing, the employing agency's "final order shall notify the complainant whether or not the agency will fully implement the [AJ's] decision." *Id*. § 1614.110(a). Complainants dissatisfied with an employing agency's final action, whether or not issued after an

AJ decision, have two options: they may either file suit or appeal to the EEOC. *See id*. § 1614.110. If a complainant takes the latter course, EEOC's Office of Federal Operations ("OFO") reviews the record, supplements it if necessary, and then issues a written decision. *Id*. § 1614.404-05. Like the employing agency's final action, the OFO's decision amounts to a final disposition, triggering the right to sue. *Id*. § 1614.405(b).

This case began in 1997 when Harold Connor and several other African-American employees of the Department of Agriculture ("DOA") filed a complaint alleging (among other things) denial of promotions on account of race. DOA referred the complaint to an AJ who found two claims meritorious: Connor's and that of another employee, Dr. Clifford Herron. After holding a hearing on remedy, the AJ awarded Connor and Herron GS-15 positions, back pay, attorneys' fees, and $10,000 each in compensatory damages. In separate final agency actions—one each for Connor and Herron—DOA accepted the findings of discrimination, as well as the remedies the AJ had awarded.

Following additional administrative proceedings not relevant to the issue now before us, Herron filed suit in the U.S. District Court for the District of Columbia challenging only the sufficiency of his $10,000 compensatory award. Although Connor is now deceased, Alfrieda Connor Scott, his former wife and the personal representative of his estate, filed a similar suit. Addressing Herron's suit first, the district court held that when a final administrative disposition finds discrimination and orders a remedy, the employee may not file suit challenging only the remedial award. *Herron v. Veneman*, 305 F. Supp. 2d 64, 74-79 (D.D.C. 2004). Instead, an employee seeking a greater award must start from scratch, i.e., the employee must file a Title VII suit and prove liability along with entitlement to relief. *Id*. Given that Herron requested trial on damages only, the court concluded he failed to state a claim. *Id*. at 74, 79. Later,

observing that Scott's claim raised "the same legal issues" as Herron's, the district court dismissed it "for the reasons stated in the court's . . . order in *Herron v. Veneman*." *Scott v. Veneman*, No. 03-1560 (D.D.C. June 18, 2004).

Scott now appeals. Because the only issue she presents is legal, our review is de novo. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001).

## II.

As the district court explained, two types of civil actions may arise from Title VII's federal-sector administrative process. *See Herron*, 305 F. Supp. 2d at 74-75. First, complainants who prevail in the administrative process but who—for whatever reason—fail to receive their promised remedy, may sue to enforce the final administrative disposition. *See, e.g.*, *Wilson v. Pena*, 79 F.3d 154 (D.C. Cir. 1996) (reversing dismissal of action contending that employing agency used improper performance rating in calculating back pay owed pursuant to EEOC finding of discrimination); *Houseton v. Nimmo*, 670 F.2d 1375 (9th Cir. 1982) (affirming decision requiring employing agency to provide job training awarded in 16-month-old administrative disposition). In such enforcement actions, the court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition. *See Moore v. Devine*, 780 F.2d 1559, 1563 (11th Cir. 1986). Second, a complainant "aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action" under Title VII. 42 U.S.C. § 2000e-16(c). In a Title VII suit brought after a final administrative disposition finding no discrimination, the district court considers the discrimination claim de novo. *Chandler v. Roudebush*, 425 U.S. 840 (1976).

Challenging only the compensatory damages award, Scott

seeks neither to enforce an administrative disposition nor to retry an unsuccessful discrimination claim. Her suit therefore raises this question: May a court review a final administrative disposition's remedial award without reviewing the disposition's underlying finding of liability? According to Title VII's plain language, the answer is no.

Because Scott takes issue with a final administrative disposition—though just a portion of it—her claim arises under 42 U.S.C. § 2000e-16(c), the provision authorizing a cause of action for a party "aggrieved by [a] final disposition." Section 2000e-16(c) provides that such "an employee or applicant for employment . . . may file a civil action as provided in section 2000e-5," which contains provisions governing actions against private employers, states, and units of local government. Section 2000e-16(d) further specifies that "[t]he provisions of section 2000e-5(f) through (k) of this title, as applicable, shall govern" Title VII suits against federal agencies. (The Supreme Court has explained that "[t]he most natural reading of the phrase 'as applicable' in [section 2000e-16(d)] is that it merely reflects the inapplicability of provisions in [section 2000e-5(f) through (k)] detailing the enforcement responsibilities of the EEOC and the Attorney General." *Chandler*, 425 U.S. at 848.)

Critical to the question before us, section 2000e-5(g), one of the provisions applied to federal sector suits by sections 2000e-16(c) and (d), states: *'[i]f the court finds* that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice," it may order various specified remedies, *id*. § 2000e-5(g)(1) (emphasis added). Thus, in a federal-sector Title VII case, any remedial order must rest on judicial findings of liability, and nothing in the statute's language suggests that such findings are unnecessary in cases where a final administrative disposition has already found discrimination and awarded relief. This rule, moreover, applies to Scott's claim even though section 2000e-

5(g) says nothing about compensatory damages, for the statute authorizing such damages indicates that section 2000e-5(g)'s requirement of a judicial finding of liability applies to them as well. *See* 42 U.S.C. § 1981a(a)(1) (making compensatory damages available "in addition to" remedies mentioned in section 2000e-5(g)).

The Supreme Court's decision in *Chandler v. Roudebush*, 425 U.S. 840, reinforces this conclusion. Explaining that federal courts should not defer to final administrative determinations finding no discrimination, the Court observed that pursuant to Federal Rule of Evidence 803(8)(c), "[p]rior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal-sector trial *de novo*." 425 U.S. at 863 n.39. Notice that the Court drew no distinction between discrimination claims resolved in favor of the complainant and those resolved against the complainant. In all cases, administrative findings may "be admitted as evidence." Were an administrative finding of liability conclusive, it would, as the district court pointed out, be "unnecessary, and indeed strange," *Herron*, 305 F. Supp. 2d at 77, for the Supreme Court to have stated that "findings with respect to" the claim could "be admitted as evidence."

*Chandler* is helpful in another respect. The Court explained that the Equal Employment Opportunity Act of 1972, Pub. L. No. 92-261, 86 Stat. 103, which extended Title VII to federal employees, sought "to accord [them] the same right to a trial *de novo* as is enjoyed by private-sector employees." 425 U.S. at 848. Requiring federal-sector plaintiffs to prove liability puts them in approximately the same position as private-sector plaintiffs who, unable to obtain legally-binding EEOC findings, *see* 42 U.S.C. § 2000e-5, must litigate both liability and remedy.

In a recent decision examining the issue presented here, the Tenth Circuit reached the same conclusion we do: that Title VII does not permit courts to review administrative dispositions'

remedial awards without first determining whether discrimination occurred. *Timmons v. White*, 314 F.3d 1229 (10th Cir. 2003). True, as Scott points out, the Fourth and Ninth Circuits have arrived at the opposite conclusion, but we think the decisions of those circuits are flawed.

In *Pecker v. Heckler*, 801 F.2d 709 (4th Cir. 1986), the Fourth Circuit, without "distinguish[ing] between an action for enforcement of a final" disposition and a suit challenging such a disposition, *Timmons*, 314 F.3d at 1236, stated that "defendants are bound by" EEOC "findings of discrimination and retaliation," 801 F.2d at 711 n.3. But *Pecker* failed to consider Title VII's plain language and relied on two decisions that provide no support for its broad conclusion: *Houseton v. Nimmo,* 670 F.2d 1375, an enforcement action, and *Moore v. Devine*, 780 F.2d 1559, which not only distinguished between enforcement actions and challenges to administrative dispositions, but also, when explaining that courts must enforce EEOC decisions, made clear that it referred only to the former type of case. Later, in *Morris v. Rice*, 985 F.2d 143, 145-46 (4th Cir. 1993), the Fourth Circuit held explicitly that a "plaintiff may limit and tailor his request for *de novo* review . . . without exposing himself to a *de novo* review of a finding of discrimination." Yet in *Morris* the court relied primarily on its earlier decision in *Pecker*. *Id.* For additional support, it cited only *Moore* and a Sixth Circuit decision, *Haskins v. Department of the Army*, 808 F.2d 1192 (6th Cir. 1987), where the court had no need to decide whether a plaintiff can seek limited de novo review because the defendant there had conceded liability.

The Ninth Circuit decision, *Girard v. Rubin*, 62 F.3d 1244 (9th Cir. 1995), suffers from precisely the same defects. Like *Pecker* and *Morris*, it fails to examine Title VII's text, relying instead on *Houseton, Morris*, *Haskins*, and language in *Moore* referring only to enforcement actions. *Id.* at 1247.

Scott insists that requiring relitigation of liability runs

counter to Title VII's policy of encouraging resolution of discrimination complaints at the administrative level. *See West v. Gibson*, 527 U.S. 212, 218-19 (1999) (discussing this policy). Requiring plaintiffs who challenge a remedial award to "relitigate [a final disposition's] finding of discrimination . . . would ill serve" this policy, Scott contends, because the requirement "would encourage employees to go directly to court at the first opportunity, instead of running the risk of erroneous, unreasonably low damages . . . based on findings of discrimination that would not be enforceable in federal court." Appellant's Br. at 18-19. According to Scott, such a requirement would also "encourage disingenuous behavior on the part of federal agencies." *Id*. at 20. Agencies could "speak out of both sides of their mouth by accepting liability in the administrative process only to attempt to deny it in the U.S. District Court." *Id.*

We think these policy arguments fail to overcome Title VII's language. As to Scott's first point, Title VII *requires* exhaustion of most administrative remedies. 42 U.S.C. § 2000e-16(c). Complainants must pursue these remedies until the employing agency enters its final action, or for 180 days if the employing agency fails to act before then. *Id*. It may be true, as Scott's counsel asserted at oral argument, that agencies often fail to take final action within 180 days, and that employees may have some incentive to sue when the right to do so accrues. Yet employees also have incentives not to do so: the administrative process could produce a final disposition acceptable to the employee, or if not, it could yield valuable evidence the employee could use in a later lawsuit. Given this, and given Title VII's exhaustion requirement, we think the effect of prohibiting remedies-only suits on an employee's incentive to pursue the administrative process is far from clear—and certainly not clear enough to justify ignoring Title VII's plain language.

As to Scott's second point, we see nothing disingenuous about an employing agency adopting an AJ's liability finding and then disputing liability in court, given that the decision to adopt the finding may well rest in part on the size of the remedial award. In this case, for example, DOA may have accepted the liability finding because it thought the remedy, including the $10,000 compensatory award, was reasonable, or at least not worth contesting. Now faced with the prospect of a larger award, DOA might quite legitimately wish to contest liability.

## III.

Under Title VII, federal employees who secure a final administrative disposition finding discrimination and ordering relief have a choice: they may either accept the disposition and its award, or file a civil action, trying de novo both liability and remedy. They may not, however, seek de novo review of just the remedial award, as Scott tries to do here. We affirm the judgment of the district court.

*So ordered.*