**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOHN C. CARVER,
             *Plaintiff-Appellant,*

v.

ERIC H. HOLDER JR., United States
Attorney General; UNITED STATES
DEPARTMENT OF JUSTICE,
             *Defendants-Appellees.*

No. 09-35084

D.C. No.
2:08-cv-00354-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
January 14, 2010—Seattle, Washington

Filed May 27, 2010

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

## COUNSEL

John C. Carver (argued); Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S., Seattle, Washington, for the plaintiff-appellant.

Marion J. Mittet (argued), Helen J. Brunner, United States Attorney's Office, Seattle, Washington; Jeffrey C. Sullivan, United States Attorney, for the defendants-appellees.

## OPINION

TALLMAN, Circuit Judge:

John C. Carver ("Carver") is a former Assistant United States Attorney ("AUSA") who took an early buy-out from federal service in 1994. He filed a complaint under the Age Discrimination in Employment Act, 29 U.S.C. § 633a, against the United States Department of Justice ("DOJ" or "Department") after he sought to be rehired for a vacant position in 1996 with the United States Attorney's Office in Tacoma, Washington. A younger individual with less experience was selected to fill the vacancy. The Equal Employment Opportunity Commission ("EEOC") made a finding of age discrimination against the DOJ for its refusal to rehire Carver. The EEOC required, *inter alia*, that the DOJ offer Carver another AUSA position, pay him back wages and benefits he would have earned during his tenure, and issue a final report of compliance.

Though Carver originally agreed with the DOJ's method of calculating back pay and benefits, he was unsatisfied when

the DOJ offset his award of accrued federal sick and annual leave with leave he was awarded during his interim public employment with the State of Washington and King County. He complained about the DOJ's calculation, but the EEOC announced it was satisfied with the payment of $262,304.16 to Carver and closed the file on his case. Carver then filed suit in the Western District of Washington for enforcement of the EEOC's determination, claiming that he was entitled to more —i.e., both the leave awarded to him at his other jobs and the leave that would have accrued had he been re-employed by the DOJ.

The district court originally denied the DOJ's motion to dismiss and held that Carver could bring suit for enforcement of the EEOC's award because the DOJ had not yet issued its final report of compliance. However, after the DOJ issued this report and sent it to the EEOC, the district court granted summary judgment against Carver, reasoning that, under 29 C.F.R. § 1614.503(g), it now lacked the ability to hear the case because Carver had received a favorable determination by the EEOC and the DOJ had fully complied with the requirements set forth in the EEOC's decision. Carver took the position that although he was suing to expand the EEOC's monetary award, he was merely seeking to enforce the remedy. He disclaimed that he was filing a de novo civil action which could potentially reopen both the administrative finding of liability for age discrimination and the remedy ordered by the agency.

Carver now appeals the district court's decision. Because the DOJ has fully complied with the EEOC's decision, and hence no portion of the order remains unenforced, Carver's only remedy is to bring the civil action he denies he is pursuing—a suit for de novo review of his claim. We hold that he cannot parse his action to increase the remedy without relitigating the liability issue in pursuing his claim in federal court. Therefore, we affirm the district court's determination that the DOJ is entitled to summary judgment.

# I

Carver was an AUSA in the Western District of Washington from August 1985 until December 1994, and prior to that time he was employed in other positions elsewhere within the Department. In December 1994, he accepted a voluntary incentive payment of $25,000 during a buy-out period offered by the DOJ and subsequently left his AUSA position. Sometime after he left the United States Attorney's Office in Seattle, he accepted employment with two other public entities: first, with the Attorney General's Office for the State of Washington, and then later with the King County Prosecuting Attorney's Office in Seattle. Though he had already accepted the $25,000 buy-out from the DOJ, in 1996 he applied to return to federal service upon learning of a vacant AUSA position in Tacoma—also located in the Western District of Washington. He was not hired for the job and the vacancy was filled by an individual thirteen years his junior.

Carver brought his age discrimination complaint before the EEOC. Following an investigation into his claims, the case was heard by an Administrative Law Judge ("ALJ"). The ALJ found that the DOJ's reasons for not offering the position to Carver were mere pretext, and concluded that the DOJ had acted in a discriminatory manner. The DOJ rejected these findings and appealed the ALJ's determination to the full Commission.

On August 8, 2005, the Office of Federal Operations (the "OFO")—the appellate branch of the EEOC—issued its decision, which agreed with the ALJ's conclusion. It held that Carver had been the subject of age discrimination and ordered that the DOJ provide adequate relief to Carver. It instructed the DOJ, *inter alia*, to offer re-employment as an AUSA to Carver, as well as to determine the appropriate amount of back pay due him, including interest and other benefits. Additionally, the DOJ was required to submit a final report of

compliance with documentation of its back pay and benefits calculations.

In response to the OFO's ruling regarding the AUSA position, the DOJ extended an offer of re-employment to Carver, which he accepted on November 8, 2005. After Carver had accepted the position, but before he returned to duty, the Department proposed the option of accepting a Voluntary Early Retirement buy-out that had been offered to eligible employees in 2005. Carver elected this option and declined his offer for rehire as an AUSA on January 3, 2006. His retirement was deemed retroactively effective as of June 1, 2005.

To satisfy the OFO's requirement regarding past wages, the parties agreed that they would calculate back pay based on gross wages Carver would have earned as an AUSA between September 29, 1996—the agreed upon start date but for the DOJ's discrimination—and June 1, 2005. From these gross wages, the Department deducted Carver's total outside earnings, an amount comprised of wages he earned while employed by the Washington Attorney General's Office and the King County Prosecuting Attorney's Office. Based on this computation, the DOJ transferred $262,304.16 into Carver's bank account on January 12, 2006. This amount equaled the total calculated back pay of $287,304.16—the amount he would have made as an AUSA, minus the gross earnings from his interim employment—less the $25,000 voluntary incentive payment he had initially received in 1996.

Carver disputed the Department's calculation of benefits. In particular, he claimed that his federal leave benefits had a monetary value which should have been added to the back-pay amount awarded by the DOJ. The Department, on the other hand, argued that the value of the leave benefits Carver earned while employed at his interim employment had to be offset against federal annual and sick leave he would have accrued had he been employed as an AUSA. The Department

made this calculation and determined that Carver was not entitled to any additional back pay as offsetting compensation for benefits. It sent an explanation of its accounting to Carver in an e-mail dated February 3, 2006.

Carver filed a Petition for Enforcement with the EEOC on February 28, 2006, and then filed a supplement on April 28, 2006, and a second supplement on May 20, 2006. In his petition, Carver sought enforcement of the OFO's decision, claiming, in relevant part, that the DOJ had not properly credited him for the annual and sick leave benefits he would have accrued had he been hired by the DOJ in 1996. Among other things, he requested that the EEOC clarify the extent to which the Department was required to credit him federal annual leave and sick leave benefits from September 29, 1996, until June 1, 2005. He also asked that the EEOC direct the Department to issue its final report of compliance, detailing the exact amount of back pay it had awarded him.

On December 12, 2007, the EEOC issued its "Decision on a Petition for Enforcement." It said: "Except for submission of its final compliance report, we find that the agency has completed its obligation to petitioner under our Order and that the agency has complied with our Order." The decision concluded: "[W]e find that the agency is in compliance with the Commission's Order in *John C. Carver v. Department of Justice*, EEOC Appeal No. 07A30025 (August 8, 2005). Accordingly, petitioner's Petition for Enforcement is DENIED."

Carver then brought suit in the Western District of Washington on January 29, 2008. He sought an order from the court directing the Department to (1) credit him with federal annual and sick leave he would have accrued between September 29, 1996, and June 1, 2005, (2) pay him for an additional 113 days of leave he would have accrued while he was an AUSA, (3) calculate back pay based only upon gross earnings during the interim period offset by the gross wages he would have earned as an AUSA, and (4) issue a final report

of compliance regarding back pay. The DOJ moved to dismiss the complaint, arguing that the regulatory scheme that governs federal sector employment discrimination claims barred judicial review of Carver's claims unless Carver sought de novo review of both the EEOC's discrimination and remedy findings. It based its argument on 29 C.F.R. §§ 1614.407 and 1614.503(a), the regulations governing discrimination claims in federal employment.

The district court initially denied the Department's motion to dismiss, stating that 29 C.F.R. § 1614.503(g) permitted a complainant to bring an action in the federal courts where the "Commission has determined that an agency is not complying with a prior decision, or where an agency has failed or refused to submit any required report of compliance." It noted that the EEOC had specifically stated in its Decision on a Petition for Enforcement that the DOJ had not yet issued a final report of compliance as required by the OFO's August 8, 2005, order. Because this report of compliance had yet to be filed, the district court could not conclude that suit was improper under 29 C.F.R. § 1614.503(g), and held that Carver was entitled to seek enforcement of the August 8, 2005, order.

Following this decision, on August 28, 2008, Carver filed a motion requesting that summary judgment be entered on his behalf, again claiming that the DOJ improperly offset benefits he accrued from his interim employment and that he was entitled to a final report of compliance by the DOJ. On October 2, 2008, the Department hand-delivered a document to the OFO entitled "Final Compliance Report, Complaint of Discrimination, John C. Carver." This report detailed how the Department had calculated the total amount of back pay— $262,304.16—and declared that it was now in full compliance with the OFO's August 8, 2005, order. The document also included about forty pages of e-mail communications between the DOJ and Carver's attorney, which explained the DOJ's computations and accounting. Just four days after filing this "Final Compliance Report," the DOJ filed its cross-motion for

summary judgment, claiming that it was now in complete compliance with the OFO's order, and that, under 29 C.F.R. § 1614.503(g), the case could not be heard in federal court unless Carver was willing to risk relitigating the EEOC's age discrimination determination.

This time the district court granted the DOJ's motion. It found that the Department had fully complied with all requirements set forth under the regulations, particularly 29 C.F.R. § 1614.503(g). The court held that it now lacked the ability to hear Carver's claims for additional compensation. The district court found that although Carver claimed he was merely requesting that the court review the EEOC's own compliance decision by limiting his lawsuit to enforcement of the remedy awarded by the EEOC, in reality he was asking the court to reopen the damages award and order the Department to increase his compensation. This, it held, was impermissible under the plain language of the regulation.

Carver appeals the district court's grant of summary judgment against him. We have jurisdiction to review this claim under 29 U.S.C. § 633a and 28 U.S.C. § 1291.

## II

Carver argues that the DOJ is not in complete compliance with the OFO's August 8, 2005, order because the Department failed to calculate properly the value of his benefits and because it did not submit an acceptable Final Compliance Report.

We review a district court's decision to grant summary judgment de novo. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 587 F.3d 1006, 1015 (9th Cir. 2009). We apply the same standards employed by the district court in determining whether summary judgment is appropriate in a specific case. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999). "Summary judgment is to be granted only if the plead-

ings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law." *Legal Aid Servs.*, 587 F.3d at 1015 (citing Fed. R. Civ. P. 56(c)).

Our sister circuits have also examined the question when an action for enforcement of an EEOC decision may be brought in the district court. Though the issue is one of first impression in our circuit, we choose to follow in the footsteps of those circuits that have gone before us.

## A

[1] Section 15 of the Age Discrimination in Employment Act (the "ADEA") provides a right of action for federal employees who allege employment discrimination on the basis of age. 29 U.S.C. § 633a. The statute grants discretion to the EEOC to promulgate any necessary rules and regulations to ensure enforcement. *Id.* § 633a(b). It also provides that "[a]ny person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of [the statute]." *Id.* § 633a(c).

[2] We have said that, "[u]nder the ADEA, an employee has two alternative options for seeking judicial redress." *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). First, "an employee [can] invoke[ ] the EEOC's administrative claims process, and then may appeal any loss therein to the federal court." *Id.* (citing 29 U.S.C. § 633a(b), (c)). Alternatively, "[w]hen the individual has not filed a complaint . . . with the Commission," 29 U.S.C. § 633a(d), he may give notice of the discriminatory action to the EEOC within 180 days of that action, and then give notice of his intent to sue at least thirty days before commencing suit. *Whitman*, 541 F.3d at 932 (citing 29 U.S.C. § 633a(c), (d)); *see also Girard v. Rubin*, 62 F.3d 1244, 1247 (9th Cir. 1995) ("An employee seeking rem-

edies under the ADEA may either pursue a direct action in federal court after notifying the EEOC, or may pursue administrative remedies by filing a complaint with the EEOC and *then* seek review in district court if he is not satisfied with the result.").

**[3]** If an employee chooses to invoke the administrative claims process promulgated by the EEOC, as Carver chose to do, he must follow the procedures set forth in the regulations issued under 29 U.S.C. § 633a(b). These regulations require that the employee file a complaint with the agency that allegedly discriminated against him, stating what discriminatory action was taken. 29 C.F.R. § 1614.106(a). An investigation ensues, *id.* § 1614.108, and a hearing before an ALJ of the EEOC may be requested by the employee, *id.* § 1614.109. Following the ALJ's determination, the agency must issue its final decision regarding the ALJ's findings. *Id.* § 1614.110.

An aggrieved complainant can then appeal this final agency decision to the EEOC, where the case is then sent to the EEOC's appellate arm, the OFO. *Id.* § 1614.401. The OFO considers the substance of the employee's complaint and reviews the ALJ's determination for substantial evidence. *Id.* § 1614.405. If the OFO issues a decision favorable to the employee, and the agency fails to comply with that decision, the employee can then file a petition for enforcement with the EEOC. *Id.* § 1614.503(a). The OFO must then ascertain whether the agency is in complete compliance with its prior order and issue a decision regarding the adequacy of the agency's response. *Id.* § 1614.503(b).

**[4]** Upon conclusion of the administrative process, the employing agency has no right to seek judicial review of the OFO's resolution of an employee's claim. *See Girard*, 62 F.3d at 1247 (noting that an agency may not bring suit against a prevailing employee). However, an employee who prevails on his claim has two avenues into federal court. First, the employee can bring an enforcement action against the agency.

*Ellis v. England*, 432 F.3d 1321, 1324 (11th Cir. 2005) ("[A] federal employee who prevails may sue in a federal district court to enforce an administrative decision with which an agency has failed to comply."); *see also Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1484 n.2 (9th Cir. 1997). In an enforcement action, a prevailing employee may not challenge the OFO's decision regarding either discrimination or what it found to be appropriate remedies. Instead, "[i]n a suit for enforcement, the issue is not liability or the remedy, . . . but rather whether the federal employer has complied with the OFO's remedial order." *Laber v. Harvey*, 438 F.3d 404, 417 (4th Cir. 2006) (en banc); *Timmons v. White*, 314 F.3d 1229, 1232 (10th Cir. 2003) (holding that the "[p]laintiff [was] not seeking the enforcement of a final EEOC order" because he "specifically requested more relief than the EEOC awarded").

**[5]** If the prevailing employee opts not to seek enforcement, he can alternatively choose to bring a civil action against the agency. 29 U.S.C. § 633a(c). Our sister circuits have concluded that such a civil action must be de novo, putting at issue both the OFO's liability determination—i.e., its decision that an agency has acted in a discriminatory manner—and its finding with regard to remedies. *See Laber*, 438 F.3d at 423-24; *Scott v. Johanns*, 409 F.3d 466, 472 (D.C. Cir. 2005); *Timmons*, 314 F.3d at 1234. However, Carver insists he wishes only to enforce the OFO's August 8, 2005, order. We must consider whether Carver's action in federal court can progress as an enforcement action.[1] We conclude that his

---

[1]Some of our sister circuits appear to believe that we answered this question in the affirmative in *Girard*, 62 F.3d 1244. *See Ellis*, 432 F.3d at 1324-25; *Scott*, 409 F.3d at 471; *but see Laber*, 438 F.3d at 424 n.21 ("It is far from certain that the Ninth Circuit would interpret Girard to allow a federal-employee plaintiff to bring a suit seeking only additional relief."). However, we do not read *Girard* so broadly. The statement in *Girard* that "an employee could seek review of parts of a favorable EEOC decision without risking a review of the remainder of that decision," is

suit for enforcement only fails and we affirm the district court's grant of summary judgment.

**B**

**[6]** Carver's overriding argument is that he seeks only to enforce the EEOC's August 8, 2005, remedial order. We do not think that Carver can so selectively choose which aspect of the administrative disposition of his claim he wishes to enforce. In particular, his argument ignores the petition for enforcement that he filed with the EEOC on February 28, 2006, and the EEOC's resulting determination that the DOJ had fully complied with its remedial order.

We believe that the EEOC's response to Carver's petition for enforcement is as much a part of the administrative disposition as is the remedial order itself. Indeed, the regulations at issue explicitly grant the EEOC the power to issue a clarification of its prior order in response to a petition for enforcement. *See* 29 C.F.R. § 1614.503(c) ("[T]he Office of Federal Operations may, . . . in response to a petition for enforcement . . . issue a clarification of a prior decision."). In our view, OFO's decision on Carver's petition for enforcement was precisely such a clarification.

**[7]** Thus, to the extent Carver characterizes his action as a suit for enforcement, we hold that his suit is limited to the enforcement of the EEOC's administrative disposition as a whole. Carver must either accept the administrative disposi-

---

ambiguous in the context of the opinion. 62 F.3d at 1247. The phrase refers to a case that distinguished between enforcement of the EEOC award and de novo review, as do all the subsequent citations. *Id.* Furthermore, *Girard*'s holding is limited to the agency's waiver of a timeliness issue. *Id.* at 1247-48. Neither party in *Girard* was asking the court to review only part of the EEOC's ruling on the merits; in fact, the employee was seeking de novo review of an unfavorable decision by the EEOC. *Id.* at 1246.

tion in its entirety or bring a de novo action in the district court. *See Scott*, 409 F.3d at 469 ("In . . . enforcement actions, the court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition."). Because the administrative disposition before us includes a finding that the DOJ was in full compliance with the EEOC's order, the district court properly granted summary judgment to defendants.[2]

Carver advances two additional arguments as to why his action should have survived summary judgment. First, he argues that the text of 29 U.S.C. § 633a(c) permits this court to enforce DOJ's compliance with the EEOC's August 8, 2005, order, notwithstanding its ruling on his petition for enforcement. Carver is mistaken. While the wording of § 633a(c) is quite expansive—the statute allows an aggrieved person to bring "a civil action . . . for such legal or equitable relief as will effectuate the purposes of [the statute]"—context establishes that it provides for no more than a de novo action in federal court.

The federal employment provisions of the ADEA, including § 633a(c) were adapted from Title VII. *See Lehman v. Nakshian*, 453 U.S. 156, 163-64, 166-67 & n.15 (1981). In the Title VII context, the Supreme Court has expressly held that the phrase "civil action" means de novo trial. *Chandler v. Roudebush*, 425 U.S. 840, 844-45 (1976). Although technically *Chandler* held that the plaintiff was *entitled* to a de novo trial in federal court, our sister circuits have relied on the case

---

[2]We do not decide whether the Administrative Procedure Act ("APA") would have allowed the district court to review Carver's claim that the EEOC's ultimate disposition of his claim ran contrary to the regulations governing back pay awards. *See* 29 C.F.R. § 1614.501(b)(1)(ii); 5 C.F.R. § 550.805; *cf. Houseton v. Nimmo*, 670 F.2d 1375 (9th Cir. 1982) (relying on the APA to review the EEOC's action in a discrimination case). Carver did not invoke the APA before the district court, and expressly disclaimed any reliance on it in his reply brief.

to hold that plaintiffs are *limited* to de novo trials when they seek to challenge the outcomes of their administrative proceedings. *See Laber*, 438 F.3d at 419-21; *Ellis*, 432 F.3d at 1323-25; *Scott*, 409 F.3d at 469-71; *Timmons*, 314 F.3d at 1233-37.

**[8]** Given the strong parallels between the ADEA and Title VII, we follow our sister circuits and hold that "civil action" in § 633a(c) means de novo trial. Thus, Carver's assertion that his suit can proceed under § 633a(c) fails.

Finally, Carver insists that summary judgment was improper because the Department neglected to submit its final report of compliance, as required by the OFO's August 8, 2005, order. Indeed, in its decision on the petition for enforcement, the EEOC stated that "[e]xcept for submission of its final compliance report," the DOJ was in compliance with the OFO's order. The district court agreed with Carver that he could bring suit in federal court so long as the DOJ had not fulfilled this requirement. However, after this ruling by the district court, the Department submitted to the EEOC a "Final Compliance Report." It contained a detailed accounting of its back-pay calculation, as well as justifications for the Department's computations. Once the DOJ sent this "Final Compliance Report" to the EEOC, the district court determined that "the only basis" for its previous holding no longer existed.

The DOJ's initial failure to supply this report permitted Carver's case to go forward. However, once it was submitted, there remained no portion of the OFO's order left to enforce. The district court's holding that the "DOJ has fulfilled its obligations" under the EEOC's order was correct. Therefore, we can find no reason to permit an enforcement action to continue against the DOJ, and agree with the district court that summary judgment against Carver was proper.

## III

**[9]** We conclude that because the EEOC found the Department in compliance with the requirements set forth in its

appellate decision dated August 8, 2005, and because the DOJ has submitted all required reports of compliance as contemplated by that decision, summary judgment in favor of the DOJ was proper. Carver cannot bring a suit for enforcement when there is no portion of the EEOC's final determination left to enforce. Each party is to bear its own costs on appeal.

**AFFIRMED.**