In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1291

KIMBERLY A. MORELAND,

*Plaintiff-Appellant*,

*v.*

JEH C. JOHNSON, Secretary of U.S. Dept. of Homeland
  Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-01125-RTR — **Rudolph T. Randa**, *Judge*.

ARGUED OCTOBER 6, 2015 — DECIDED NOVEMBER 25, 2015

Before WOOD, *Chief Judge*, and POSNER and WILLIAMS,
*Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff, an occasional employee (we'll explain what that means) of the Federal Emergency Management Agency (FEMA), which is part of the Department of Homeland Security (DHS), appeals from the dismissal of a suit against the department in which she charges retaliation against her for filing an administrative

claim of discrimination on the basis of her race (black), age (in her forties at the time of the incident), and sex. Both the suit and the administrative proceeding, which preceded it, are based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.

The connection between the suit for retaliation and the administrative claim of discrimination is the critical issue presented by the appeal. The suit also began as an administrative proceeding within DHS rather than as a judicial proceeding, but it molted into a court suit, now before us on the plaintiff's appeal from its dismissal by the district judge. The administrative steps that preceded the district judge's decision are so convoluted that we've attached a timeline as an appendix to this opinion.

At the time the events giving rise to this litigation began to unfold, the plaintiff was what is called a Disaster Assistance Employee or, more illuminatingly, a Disaster Reservist. These are persons who are on call for temporary deployment to disaster sites at which FEMA has a shortage of regular employees. When not deployed, a Disaster Reservist, though remaining classified as a FEMA employee, is not paid.

The plaintiff lives in Texas but in June 2009 was deployed to Iowa. Because she doesn't like to fly, she sought permission to drive and this was granted. The drive took 19 hours. When she arrived she sought permission to remain in the same hotel rather than have to move from hotel to hotel; apparently her assignment covered a multicounty area (we're given none of the details, but fortunately they're not relevant to this appeal). Permission was denied. She protested and "walked away." We're not sure what that means, but it must

have irritated her boss, the local FEMA Branch Director, because he sent her home to Texas forthwith even though she'd relented and agreed to move among hotels. On the day after her protest against having to move from hotel to hotel she was issued a negative performance evaluation (though not so negative as to terminate her position as a Disaster Reservist) rating her both undependable and uncooperative. And as a final ignominy she was paid for only 8 of the 19 hours that it took her to drive from Texas to Iowa; we don't know how much of the return trip she received compensation for.

Claiming that the bad treatment she'd received was discriminatory, she filed a formal complaint with the Department of Homeland Security. But not until four years later did the Equal Employment Opportunity Commission's Office of Federal Operations (EEOC OFO) agree with an EEOC administrative law judge's determination that she had indeed been mistreated by DHS. (The EEOC calls its hearing officers "administrative judges," not "administrative law judges," 29 C.F.R. § 1614.109, but we'll use the more familiar term.) She was awarded back pay, benefits, and compensatory damages and the unfavorable performance evaluation was purged, which would have increased the likelihood of her receiving future deployments—in principle, but not in practice, because her term as a Disaster Reservist had ended and had not been renewed, making her ineligible for deployment.

Two of the witnesses at the hearing before the administrative law judge, both of them FEMA employees testifying for their employer and against Ms. Moreland, had been compensated for the time they'd spent and the travel ex-

penses they'd incurred in their role as witnesses. She had been a witness too of course, yet had received no compensation for her time and for her travel expenses (which must have been considerable, since the hearing was held in Milwaukee and she was still living in Texas). She told the administrative law judge that she had requested time and travel expenses from DHS but had been denied them, and she said that this was evidence of the department's discrimination against her. As for the disparity in treatment between her and FEMA's witnesses, she contends that it was retaliation for her charging discrimination by DHS; such retaliation if proved would indeed violate Title VII. 42 U.S.C. § 2000e-3; *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 680–81 (7th Cir. 2015).

So what to do to obtain relief for this new unlawful conduct? She couldn't ask her lawyer; she didn't have a lawyer. So she told the administrative law judge about the problem (her original proceeding was still pending before him), and he advised her to submit a second complaint. She did that, but DHS dismissed it on the ground that instead of filing a new charge she should have added the new charge (retaliation) to her original complaint (the one that had kicked off her original charge of discrimination)—as she could still have done because the administrative law judge had not yet ruled on the original claim. See 29 C.F.R. § 1614.106(d); EEOC Management Directive 110, ch. 5, §§ IV(D)(1), IV(D)(3)(a) (Nov. 9, 1999). But she was pro se and hadn't known how to litigate her new charge. That's why she'd consulted the administrative law judge and, as we noted, he had told her to institute a new action, which she did. The wording of DHS's dismissal of her second suit—the retaliation suit, which the administrative law judge had told her was the proper way to present her claim of retaliation—did

not indicate whether she could amend her initial complaint given that she'd filed it two years before and had already had her hearing on it. In fact DHS never told her that she could amend her initial complaint; it just told her that her new claim "must be raised within the underlying complaint." She had already "raised" it, she thought, with the administrative law judge.

That didn't satisfy DHS, which insisted that she should have included the new claim in an amendment to her first complaint because raised separately it was a "spin-off" complaint. An EEOC regulation authorizes dismissal of a complaint "that alleges dissatisfaction with the processing of a previously filed complaint." 29 C.F.R. § 1614.107(a)(8). DHS told her that therefore any "dissatisfaction with the EEO process must be raised within the underlying complaint," which was the first complaint she'd filed; the second, the spin off, was her complaint about how DHS had treated her during the hearing on the first complaint, treatment that had discriminated, she contended, in favor of FEMA's witnesses.

She didn't try to amend her original complaint, but instead continued pressing the second one as a stand-alone by appealing DHS's dismissal of the second complaint to EEOC OFO, which however affirmed DHS on the ground that the second complaint was indeed a spin-off complaint. But in addition EEOC OFO told her that it wasn't too late for her to incorporate the allegations of her second complaint into her first administrative proceeding, even though an appeal from the administrative law judge's decision was pending. It was rather an odd suggestion, since if adopted it would have converted that appeal, so far as the new allegations were concerned, into a trial-level proceeding. Nevertheless this is

occasionally done—but there is no guarantee of its being done in any particular case. Compare *Mattocks v. Caldera*, EEOC Appeal No. 01A00959, 2000 WL 621699, at *1-*2 (May 2, 2000) with *Jones v. Shinseki*, EEOC App. No. 0120123526, 2013 WL 874654, at *2 (Feb. 26, 2013). But having been told by the administrative law judge that she could *not* raise her retaliation claim in her original case, she did not pursue the vague contradictory instruction from EEOC OFO.

The affirmance set the stage for Moreland's present suit, which was filed in federal district court and named the Department of Homeland Security as the defendant, and which is now before us in this appeal. The district judge granted DHS's motion for judgment on the pleadings, Fed. R. Civ. P. 12(c), precipitating the present appeal. The judge reasoned that the plaintiff had failed to exhaust her administrative remedies by failing to amend her original administrative complaint to add the retaliation claim, as EEOC OFO had told her was the right way to proceed. (On exhaustion of administrative remedies in Title VII cases, see, e.g., *Reynolds v. Tangherlini*, 737 F.3d 1093, 1099 (7th Cir. 2013).)

It might seem obvious that a claim that derives in some sense from a pending claim should be consolidated with it, as EEOC OFO insisted. Actually it's not obvious. Suppose that in the midst of a trial for battery the defendant leaps up from his seat, pulls an apple out of his pocket, and throws it at the plaintiff with great force: a second battery. It would be odd for the judge (especially but not only were it a jury trial) to interrupt the trial and tell the plaintiff to file an amended complaint adding the courtroom battery to the original battery charge, leading to a new round of pleadings followed eventually by a resumption, or perhaps do-over, of the trial.

The administrative proceeding launched by Moreland's first complaint was almost two years old when she filed her second complaint, and it could well have been significantly protracted had the proceeding been expanded to embrace the new charge. It seemed more sensible to the administrative law judge, whom the plaintiff consulted and whose advice she followed, that she file a separate administrative action.

The first proceeding—the administrative claim of discrimination—was resolved in the plaintiff's favor more than two years after the Department of Homeland Security had dismissed the second proceeding. It was resolved after she had filed her district court suit but before the district judge had dismissed that suit. The critical question is whether the plaintiff's second administrative complaint alleged "dissatisfaction with the processing of a previously filed complaint" and thus was a spin-off. That's doubtful. The earlier complaint had sought relief for the harsh treatment that FEMA had meted out to her when she was deployed to Iowa. Although it took longer than it should have to decide the case, it was eventually decided in her favor and she never complained about the delay. The dissatisfaction that prompted her second complaint was not with how her complaint had been processed but with DHS's discriminating, for retaliatory reasons as she believed, in favor of its witnesses (FEMA's witnesses, but remember that FEMA is part of DHS) by compensating their time and travel expenses in the original proceeding, but not hers. She has never argued that the alleged retaliation interfered with her first case (whether by delaying its conclusion or in any other way), which in fact she won. When one considers how long it took to decide the first case, it becomes apparent that folding the second case (the retaliation case) into it would have protracted the first

case unconscionably. Instead of taking four years to decide, it might have taken six years, or even more.

A further objection to the application of the "no spin-offs" regulation is that DHS had actually finished processing the plaintiff's first complaint when she made her retaliation claim. Having completed its investigation it told her she could either request an immediate decision by DHS or have her complaint heard by an EEOC administrative law judge, and she chose the latter route, which resulted in a shift of jurisdiction over the complaint from the department to the administrative law judge. The plaintiff has no complaint about how the first complaint was processed by the department. Rather, she claims discrimination in the department's treatment of her during the EEOC proceeding.

Anyway a complainant's failure to exhaust administrative remedies prior to bringing suit against her employer "does not preclude establishing the claim in federal court when the failure to amend the charge to reflect a new claim is due to the fault of the EEOC." *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 386–88 (9th Cir. 1990). EEOC Management Directive 110, ch. 5, §§ IV(D)(1), IV(D)(3)(a) (Nov. 9, 1999), states that "a complainant … dissatisfied with the processing of his/her pending complaint … may present these concerns" to the administrative law judge. The plaintiff did so, and the judge should have either told her about the spin-off regulation and that it was not too late for her to amend her original complaint, or, better yet, have accepted her new claim and consolidated it with the existing complaint—once a complaint has reached the hearing stage, consolidation of similar complaints is to be done by the administrative law judge presiding over the hearing, rather than by

the complainant. 29 C.F.R. § 1614.606; Federal Sector Equal Employment Opportunity, 64 Fed. Reg. 37644-01 (July 12, 1999). The administrative law judge overlooked consolidation but EEOC OFO could have consolidated the claims on appeal, and that would have kept her second claim alive. Because the EEOC administrative law judge directed Moreland to file a separate complaint and EEOC OFO failed to consolidate her separate complaint with the original, it is the EEOC's fault that the retaliation claim did not become part of the original case. So the district court erred in dismissing the plaintiff's suit. The judgment is therefore reversed and the court directed to permit the plaintiff to proceed with her claim that she was a victim of retaliation in violation of Title VII.

REVERSED, AND REMANDED WITH DIRECTIONS.

APPENDIX: TIMELINE OF THE PROCEEDINGS IN THIS CASE

Briefly: Title VII delegates to the employing federal agency the responsibility for conducting the initial investigation into charges of discrimination. 42 U.S.C. § 2000e-16. If the agency does not dismiss the complaint on procedural grounds, the complainant can ask the employing agency to issue a final decision or can request a hearing before an EEOC administrative law judge, in which event the employing agency can decide whether to accept the decision of the administrative law judge. *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005). The employing agency's decision is reviewable by EEOC OFO. *Id.* (We have simplified the description of the actual process.)

**Step One:** Complainant meets with the employing agency's EEO Counselor to attempt to resolve the complaint amicably. 29 C.F.R. § 1614.105(a); *Lapka v. Chertoff*, 517 F.3d 975, 981 (7th Cir. 2008).

·   Moreland contacts a FEMA EEO Counselor on March 15, 2011, the same day that she learns, during the hearing before the EEOC administrative law judge on her first charge, that DHS's witnesses were being compensated for time and travel. Her initial interview with the EEO Counselor takes place three days later.

·   The Counselor contacts the lawyer representing DHS in the EEOC hearing in an attempt at an informal resolution of her second charge. The lawyer contends that Moreland was responsible for her own travel expenses because she was in "no-pay" status, and that the other witnesses had been paid because otherwise they would have had no incentive to attend the hearing. No resolution of the dispute is reached.

**Step Two:** If no informal resolution is reached, the complainant is issued a Right to File a Formal Complaint letter, and can then file a complaint with the employing agency. 29 C.F.R. § 1614.105(d).

·   Things move quickly: the Counselor issues Moreland a Right to File a Formal Complaint letter on March 23.

·   She files a formal complaint with DHS on the time and travel issue.

**Step Three:** The agency then reviews the complaint and determines whether the case should be dismissed on procedural grounds. 29 C.F.R. § 1614.107. If not, the agency will conduct an investigation, *id.* § 1614.108(a), and when it's completed will inform the complainant that he or she can request either a hearing before an EEOC administrative law judge or an immediate final decision by the employing agency. *Id.* § 1614.108(f); *Scott v. Johanns*, *supra*, 409 F.3d at 468.

(a) If the agency dismisses the complaint or the complainant requests an immediate final decision by the agency, the

agency's decision is appealable immediately to EEOC OFO. 29 C.F.R. § 1614.401(a); *Robbins v. Bentsen*, 41 F.3d 1195, 1198 (7th Cir. 1994).

· In July 2011 DHS dismisses Moreland's formal time and travel expense complaint as a "spin-off" of her first complaint. It doesn't tell her that she can still amend her first complaint, as she could because while the hearing on that complaint was long over the administrative law judge had not yet issued his final decision. Later DHS argues that it told her in its dismissal letter to amend her first complaint to claim reimbursement of time and travel expense, but the text of the letter does not support that characterization. The letter told her that her claim "must be raised within the underlying complaint" but did not explain what mechanism was available to her to do so.

(b) If the complainant has asked for a hearing before an administrative law judge, the employing agency decides whether to adopt the administrative law judge's decision, thus making it final, or, if the agency disagrees with the decision, whether to appeal the decision to EEOC OFO. 29 C.F.R. § 1614.110; *Watson v. Henderson*, 222 F.3d 320, 321 (7th Cir. 2000).

· That was the status of Moreland's first charge of discrimination when she discovered that the FEMA witnesses were being paid for their time and travel while she was not. Thus DHS's processing of her initial charge was completed by the time her second claim arose.

· After the administrative law judge rendered his decision on her first complaint, DHS issued its own decision, refusing to implement the judge's decision and instead appealing it to EEOC OFO.

**Step Four:** The complainant can appeal an agency's final decision, or the dismissal of a complaint, to EEOC OFO. 29 C.F.R. § 1614.401; *Robbins v. Bentsen*, *supra*, 41 F.3d at 1198–99.

· Moreland appeals DHS's dismissal of her second complaint in July or August of 2011.

· In August the administrative law judge issues his decision on her first complaint, finding discrimination.

· In September DHS issues its decision refusing to implement the administrative law judge's decision. Instead it appeals to EEOC OFO. Moreland also files a notice of appeal, but as she obviously is not challenging the administrative law judge's decision her notice merely opposes DHS's appeal. It does not occur to her to lodge her second complaint in the appeal proceeding brought by her antagonist, DHS, in her first case. Nevertheless her appeal from the dismissal of her second complaint is pending before EEOC OFO at the same time. In short, by September 2011 both her claims are pending on appeal before that agency.

**Step Five:** EEOC OFO issues its final decision. 29 C.F.R. § 1614.405; *Robbins v. Bentsen*, *supra*, 41 F.3d at 1199.

· In March 2012 it affirms DHS's dismissal of Moreland's second complaint but advises her in a footnote to raise her travel and time expense issues in her pending appeal from the dismissal of her first complaint. Instead she requests reconsideration by EEOC OFO.

· In August EEOC OFO denies Moreland's request for reconsideration.

· In November she files a pro se federal suit under Title VII against DHS regarding the time and travel expense issue.

· In September 2013 EEOC OFO affirms the administrative law judge's findings regarding Moreland's first complaint but does not address the time and travel expense issue.